[No. 5658-9-III.   Division Three.   March 13, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES
T. STEPHENS, *Appellant.*

*Richard Perry,* for appellant (appointed counsel for appeal).

*Allen C. Nielson, Prosecuting Attorney,* for respondent.

THOMPSON, J.—James T. Stephens appeals a sentence and conviction for manufacturing a controlled substance. RCW 69.50.401(a)(1)(ii).

After receiving a tip, Ferry County Deputy Sheriff Kissinger and Tribal Police Officer Finley found a marijuana plantation on lands of the Colville Confederated Tribes Indian Reservation, Ferry County, Washington. Several days later, the officers returned to the area and noted the plants had not been watered recently. They began a stakeout and observed Stephens ride a motorcycle toward the area.

The officers could not see the marijuana patch or Stephens from their position. They heard the motorcycle roll away and then start again. They returned to the planted area and discovered the plants had been watered.

Stephens was arrested a day or so later. Kissinger then prepared an affidavit[1] in support of a request for a warrant

---

[1]The pertinent portions of the affidavit state:

"On 8-5-82, Deputy Sheriff James Kissinger observed James T. Stephens coming into a marijuana growing area and water the plants.

"On 8-6-82 Chief Deputy Sheriff Patrick and Deputy Sheriff Kissinger and two police officers from the Spokane Bomb Squad went to the growing area and there was a trap set with explosives. It was made of toggle switch, 9 v. battery, and black wire with a white strip then the wire was connected to a three second delay electric primer with Lt. Grn. and red wire into a ½ stick of dynamite. The bomb was exploded at the scene.

to search Stephens' residence and vehicles. The warrant was authorized and one marijuana plant was seized on the premises. Stephens admitted growing it. He was charged with manufacturing a controlled substance. Stephens, at a pretrial hearing, moved to suppress the admission of the one marijuana plant into evidence, contending the search was illegal. The motion was denied; he was convicted, and now appeals.

The controlling issue on appeal is whether the trial court erred in failing to suppress the evidence obtained pursuant to the search warrant. Stephens contends the affidavit to obtain the warrant contained false and conclusory statements. We agree the affidavit was defective and reverse.

■ Though an affidavit may be facially sufficient to justify a warrant, a defendant may challenge the affidavit for false statements. *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978); *State v. Larson,* 26 Wn. App. 564, 613 P.2d 542 (1980). The defendant must show the affidavit contains intentional or deliberate falsehoods; negligent or innocent mistakes are not enough. *Franks v. Delaware, supra; State v. Larson, supra; State v. Frye,* 26 Wn. App. 276, 613 P.2d 152 (1980).

Here, the officer in his affidavit stated he had observed Stephens water the plants. This was not true. The officer was aware the plants needed water, saw Stephens approach the area, waited for Stephens to leave, then inspected the plants and found they had been watered. From these circumstances, the officer concluded Stephens had watered the plants. However, the officer admits he did not see Stephens

---

"The motorcycle that Stephens rode to the growing area was parked at Stephens' residence located 18.9 miles south of SR 20 on the Inchelium–Kettle Falls road. This residence is on the left side of the road as you are going south and stands a ¼ mile from the road. This house is a[n] unpainted wood structure with lots of vehicles around in various states of repair.

"On the motorcycle used for watering, was a brown sack containing marijuana. When Stephens was arrested on Felony Charges, he asked his wife to bring him his shirt and shoes. He left some items from his person on the motorcycle. His wife returned with the shirt and in the pocket was a small amount of marijuana. The marijuana was very green and looked to be fresh."

actually water the plants. To say he "observed" the defendant was therefore false.

The State argues this was not an intentional or reckless falsehood as required by *Franks, Larson,* and *Frye.* We do not agree. The word "observed" as used in the affidavit conveys to the reader the message that the officer personally saw the defendant water the plants. Yet no actual observation took place. *See State v. Payne,* 25 Ariz. App. 454, 544 P.2d 671 (1976).

The remedy for such a misstatement as mandated by *Franks* and *State v. Sweet,* 23 Wn. App. 97, 596 P.2d 1080 (1979) is to excise the offending language and if the remaining information does not show probable cause, the evidence seized must be suppressed. On the other hand, if the affidavit contains sufficient raw facts, without the offending language, the search warrant may still be valid. *Franks v. Delaware, supra; State v. Sweet, supra.*

Here, the affidavit also stated the defendant had a small quantity of marijuana in his possession at the time of arrest. We find this inadequate to justify a search of the residence for evidence of possible manufacturing of a controlled substance. Thus, without the false statement, the affidavit is insufficient to justify the issuance of the search warrant.

If, in the alternative, the word "observed" is regarded as a 1–word summation of facts known to the officer and therefore not false, the affidavit remains defective because it is conclusory. The underlying facts must be listed in the affidavit and not just the conclusions. A warrant may be issued only upon finding of probable cause from specific facts and circumstances presented. *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). Conclusory statements alone are not acceptable. The magistrate must be informed of some of the underlying circumstances supporting the affiant's conclusions. *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965).

The officer concluded the defendant watered the plants.

That conclusion appears reasonable in light of the facts presented at the suppression hearing. But when the officer neglected to list the facts and circumstances which led to that conclusion, the officer usurped the function of the detached and impartial magistrate. This he cannot do.

Thus, regardless of whether the use of the word "observed" be regarded as intentionally or recklessly false, or a conclusion, the result is the same. The untrue statement of the affiant that the defendant was actually seen watering the plants is the single most persuasive fact in the affidavit that would establish probable cause to issue the warrant. Without the false language, the statement remaining is insufficient to establish probable cause.

Facts developed at the suppression hearing indicate that if the magistrate had been given the details of the stakeout and told the basis for the officer's conclusion, he would inevitably have found probable cause anyway. The suppression hearing does not provide society protection against unreasonable search and seizure—it is the decision of the independent judicial officer which serves this purpose. That decision can only be as valid as the underlying facts upon which it is based. Thus, the integrity of this judicial process demands at the very least that the information provided be truthful if the magistrate's authority is to be respected and appropriately fostered. To hold otherwise would undermine the entire warrant procedure.

Further, in reviewing the validity of any warrant, we may consider only information before the magistrate at the time the warrant was issued. *Seattle v. Leach,* 29 Wn. App. 81, 627 P.2d 159 (1981); *Aguilar v. Texas,* 378 U.S. at 109 n.1; *Giordenello v. United States,* 357 U.S. 480, 484 n.2, 2 L. Ed. 2d 1503, 1509, 78 S. Ct. 1245 (1958).

Since we hold the court erred in admitting the evidence obtained in the search, we need not reach the remaining issues.

The judgment of the trial court is reversed; the cause is

remanded for trial without the evidence seized in the search.

McINTURFF, J., concurs.

GREEN, A.C.J. (dissenting)—I dissent. In my view, the majority's analysis is an overly technical application of the rules pertaining to search warrants and loses sight of the purpose behind those rules.

It is well established that warrants are to be interpreted in a practical and realistic manner. To obtain a search warrant, police officers are not required to produce proof beyond a reasonable doubt or even prove a prima facie case of criminal activity; they need only present enough facts to enable a magistrate to conclude there are reasonable grounds to support a probability of criminal activity. Whether the standard has been met is viewed from the standpoint of a person of ordinary caution. *State v. Seagull*, 95 Wn.2d 898, 906–07, 632 P.2d 44 (1981). As stated by the Court in *Illinois v. Gates*, __ U.S. __, 76 L. Ed. 2d 527, 103 S. Ct. 2317, 2328 (1983) (quoting *United States v. Cortez*, 449 U.S. 411, 418, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981)):

> Perhaps the central teaching of our decisions bearing on the probable cause standard is that it is a "practical, nontechnical conception." . . .
>> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common–sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

Further:

> [W]hen a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a common-sense, manner. Although in a particular case it may not

be easy to determine when an affidavit demonstrates the existence of probable cause, *the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.*

(Italics ours.) *United States v. Ventresca,* 380 U.S. 102, 109, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965); *State v. Walcott,* 72 Wn.2d 959, 962, 435 P.2d 994 (1967), *cert. denied,* 393 U.S. 890 (1968).

It is true the preference given to warrants should not become a subterfuge for searches based on merely the officer's conclusion that probable cause exists. *United States v. Ventresca, supra; Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). Nor should this preference condone warrants issued on representations made in reckless disregard for the truth or deliberate falsehoods. *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, 2684 (1978). However, in my view, the facts here do not fall within either of these principles.

The officers in this case testified they positioned themselves so they could see or hear anyone coming into the area in which the marijuana patch was located. They observed defendant drive from his home which was closer than any other residence to the patch and down the only road leading into it. They then heard the motor to his engine stop. After about an hour, they observed defendant exit and proceed back to his home. They neither saw nor heard anyone else enter during this time. Before defendant's entry into the patch, the marijuana plants were dry. After he left, they were wet.

The majority concludes that by the fact the officers did not actually see defendant water the plants, their representation was per se deliberate, or in reckless disregard of the actual facts. From the officers' testimony, I find no such deliberate misrepresentation. To the contrary, the statement was based upon the only possible conclusion which could be drawn. Certainly these facts do not involve the "spector of intentional falsification" to which the Court in *Franks v. Delaware,* at 168, refers: *i.e.,* that "a police officer

[is] able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then [is] able to remain confident that the ploy was worthwhile." The teaching of *Illinois v. Gates,* 103 S. Ct. at 2330–31, is appropriate here:

> [A]ffidavits "are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." *Ventresca, supra,* 380 U.S., at 108, 85 S.Ct., at 745. Likewise, search and arrest warrants long have been issued by persons who are neither lawyers nor judges, and who certainly do not remain abreast of each judicial refinement of the nature of "probable cause." . . . [M]any warrants are—quite properly, [*Spinelli v. United States,* 393 U.S. 410 (1969)]—issued on the basis of non-technical, common–sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings.

(Citation omitted.) I agree with the trial court that there was no showing of deliberate or reckless misrepresentation under *Franks*.

Nor do I find the officer's affidavit to be impermissibly conclusory. First, contrary to the cases cited by the majority, the officers here did not merely set forth their conclusion that probable cause existed or their information was reliable. To the contrary, they alleged an ultimate fact; *i.e.,* defendant watered the plants. No conflicting inferences could be drawn from the facts. It is as clear as two plus two equals four. While the officer's statement could have been more precise, we should not suppress the search because the affidavit stated the obvious and clearly showed probable cause for a search warrant.

Moreover, the affidavit contained additional facts. The officers found a bag of marijuana on defendant's motorcycle. After his arrest Mr. Stephens asked his wife to bring him a shirt from the house. "His wife returned with the shirt and in the pocket was a small amount of marijuana. The marijuana was very green and looked to be fresh." The

affidavit further showed Deputy Sheriff Kissinger was experienced in drug identification.

In *State v. Walcott, supra* at 962–63, the court (quoting *Aguilar v. Texas,* 378 U.S. at 111) stated:

> Thus, when a search is based upon a magistrate's, rather than a police officer's, determination of probable cause, the reviewing courts will accept evidence of a less "judicially competent or persuasive character than would have justified an officer in acting on his own without a warrant," [*Jones v. United States,* 362 U.S. 257, 270 (1960)], and will sustain the judicial determination so long as "there was substantial basis for [the magistrate] to conclude that narcotics were probably present . . ."

In my opinion, the affidavit here set forth an adequate factual basis for the magistrate to conclude defendant had marijuana in his home. Hence, the search warrant should have been upheld.

As noted in *Gates,* the reasonable person standard of interpreting search warrants is designed to keep the law in tune with the realities of criminal investigation and "common–sense conclusions about human behavior . . ." The position taken by the majority is hypertechnical and deviates from the approach espoused in *Gates.*

For the foregoing reasons, I would affirm.

Reconsideration denied April 5, 1984.

Review denied by Supreme Court June 22, 1984.