[No. A097336. First Dist., Div. Four. Oct. 16, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
SANDY L. PRESSEY, Defendant and Appellant.

**COUNSEL**

Richard C. Neuhoff and Barbara A. Zuras, under appointments by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, René A. Chacón and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KAY, P. J.**—Appellant Sandy L. Pressey pled no contest to possession of methamphetamine for sale (Health & Saf. Code, § 11378) and misdemeanor driving under the influence of drugs (Veh. Code, § 23152, subd. (a)), and was placed on probation. He contends that the court erred in denying his motion to suppress evidence. The principal issue is whether probable cause to believe that a person uses illegal drugs automatically provides probable cause for a warrant to search the person's home for those drugs. We hold that it does not.

## I. RECORD

Appellant's motion sought to quash a warrant that was issued to search his residence; the motion was based entirely on the warrant and the supporting affidavit of Napa Police Officer Brian Campagna. Campagna stated that he and Sergeant Donaldson were riding in an unmarked police vehicle around 4:30 p.m. on April 11, 2001, when they noticed appellant driving erratically and requested a marked police car to pull him over. Officer Rosin responded and stopped appellant. When Rosin and Campagna approached the car, they detected a strong odor of marijuana. Rosin determined that appellant was driving under the influence of marijuana and a central nervous system stimulant, and placed him under arrest. Rosin searched appellant and found 1.5 grams of methamphetamine in a glass vial inside in a fanny pack appellant wore around his waist. Rosin found a marijuana cigarette in an ashtray in the car. Appellant told Rosin that he lived at an address on Villa Lane in Napa, which was listed as his residence in Department of Motor Vehicle records.

Two hours after the arrest, Campagna obtained a warrant to search appellant's residence for methamphetamine, marijuana, and property associated with their use. Campagna indicated in his affidavit that he had been a police officer for five years, and had worked the last two and one-half years as an undercover narcotics agent. He described his drug enforcement training and experience, and stated: "It has been my experience and the experience of other experienced narcotics investigators with whom I have spoken that persons involved in the use and transportation of methamphetamine and marijuana will normally have most if not all of [various enumerated] items

of evidence [associated with use, storage, and transportation of methamphetamine and marijuana] within their temporary or permanent residences, businesses, vehicles, storage areas, storage containers or on their persons. . . . [¶] It has been my training and experience that users of controlled substances and narcotics will keep additional quantities of controlled substances and narcotics at their residence in addition to what they carry on their person's [sic] while away from their residence. Controlled substance and narcotic users will keep quantities of controlled substances and narcotics at their residence so they always have a source to satisfy their addiction or habit."

The warrant was executed a few minutes after it was issued; the police found 10.3 grams of methamphetamine and 20.2 grams of marijuana packaged in small plastic baggies, measuring scales, $1,335 in cash, and various items of drug paraphernalia at appellant's residence.

The motion to suppress was heard and denied by the judge who had issued the warrant. Appellant maintained that the warrant affidavit did not establish probable cause, and that the warrant was not sought in good faith. The court found that probable cause was demonstrated, and did not reach the good faith issue.

## II. Discussion

### A. *Probable Cause*

Appellant renews his argument that the search warrant was issued without probable cause. ■ The question is "whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in [the] place [to be searched]." (*Illinois v. Gates* (1983) 462 U.S. 213, 238 [103 S.Ct. 2317, 2332, 76 L.Ed.2d 527]; *People v. Camarella* (1991) 54 Cal.3d 592, 601 [286 Cal.Rptr. 780, 818 P.2d 63].) The magistrate's determination of probable cause is entitled to deferential review, but there must have been a "substantial basis" for the finding that the property sought was " 'probably present' " on the premises. (*People v. Kraft* (2000) 23 Cal.4th 978, 1040-1041 [99 Cal.Rptr.2d 1, 5 P.3d 68].)

■ The finding of probable cause in this case was based on two circumstances: (1) appellant's arrest, during a traffic stop, for simple possession of controlled substances, as opposed to possession for sale; and (2) the opinion of an experienced officer that drug users with controlled substances on their person or in their car are likely to have more of those substances where they live. We agree with appellant that these two circumstances did not establish probable cause to search his residence, and that the court's finding to the contrary cannot be sustained.

The issue presented is evidently one of first impression in California. Pertinent considerations were identified in *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1206 [275 Cal.Rptr. 729, 800 P.2d 1159]: ■ "Mere evidence of a suspect's guilt provides no cause to search his residence. [Citation.] However, '[a] number of California cases have recognized that from the nature of the crimes and the items sought, a magistrate can reasonably conclude that a suspect's residence is a logical place to look for specific incriminating items.'" (See *ibid.* [tip that suspect was selling drugs at his residence and controlled buy in backyard "permitted a logical inference that narcotics were probably being kept on the premises"].) This court and others have observed that the magistrate may "'legitimately consider'" the opinions of experienced narcotics officers in deciding whether there is probable cause to search a suspect's home for illegal drugs. (*People v. Stanley* (1999) 72 Cal.App.4th 1547, 1555 [86 Cal.Rptr.2d 89]; *People v. Deutsch* (1996) 44 Cal.App.4th 1224, 1232 [52 Cal.Rptr.2d 366]; *People v. Tuadles* (1992) 7 Cal.App.4th 1777, 1784 [9 Cal.Rptr.2d 780].) It has also been noted that the circumstances of an arrest "can, without more, support a magistrate's probable cause finding that the culprit's home is a logical place to search for specific contraband." (*People v. Koch* (1989) 209 Cal.App.3d 770, 779 [257 Cal.Rptr. 483], disapproved on another point in *People v. Weiss* (1999) 20 Cal.4th 1073, 1083 [86 Cal.Rptr.2d 337, 978 P.2d 1257]; see also *People v. Johnson* (1971) 21 Cal.App.3d 235, 245 [98 Cal.Rptr. 393].)

Cases throughout the country have considered whether an officer's opinion, or a logical inference, is sufficient to provide probable cause to search a residence for drugs where there is evidence that the occupant is a drug *dealer*, but no direct evidence of illegal activity connected with the home. (See generally *State v. Thein* (1999) 138 Wash.2d 133 [977 P.2d 582, 587-588]; 2 LaFave, Search and Seizure (3d ed. 1996) § 3.7(d), pp. 377-381.) There is a split of authority on the point. Some cases hold that an opinion or logical inference is not enough, and that there must be some additional facts concerning the residence, "such as that the seller went to his home prior to the sale, or that the sale occurred near the home, which would support the inference that the supply is probably located there. But in more recent times many courts have been disinclined to require such facts in the particular case to support that inference. Rather, it is commonly held that this gap can be filled merely on the basis of the affiant-officer's experience that drug dealers ordinarily keep their supply, records and monetary profits at home." (2 LaFave, *supra*, § 3.7(d), pp. 378-379, fns. omitted; see also *State v. Thein, supra,* at pp. 587-588 [noting split of authority, but venturing that "[m]ost" courts "require that a nexus [to the home] . . . be established by specific facts; an officer's general conclusions are not enough"].)

The drug dealer issue has arisen in the California Courts of Appeal, as well as the federal circuits and other states. The California cases include: *People v. Cleland* (1990) 225 Cal.App.3d 388, 392-393 [275 Cal.Rptr. 126] (seizure of baggies of marijuana apparently packaged for sale from defendant's person, plus officer's opinion that additional contraband would likely be found at defendant's residence justified warrant for search of residence); *People v. Koch, supra,* 209 Cal.App.3d at pp. 778-781 (evidence of drug dealing found during traffic stop, plus officer's opinion "that because defendant was a trafficker in illegal drugs his residence was a likely depository for more contraband or evidence" provided probable cause for search of home, but exigent circumstances for warrantless entry were lacking); *People v. Aho* (1985) 166 Cal.App.3d 984, 991-993 [212 Cal.Rptr. 686] (evidence that defendant was selling drugs, his prior drug arrests and convictions, and officer's opinion that "persons dealing in controlled substances and stolen property will frequently secrete contraband in closed or locked containers and other closed or locked hiding places within their residence" created probable cause for search of residence); and *People v. Johnson, supra,* 21 Cal.App.3d at pp. 242-246 (defendant was arrested on premises of large scale drug operation, and officer opined that dealers keep additional drugs at or near their residence for immediate sale; "if additional evidence other than the . . . arrest were needed [for a warrant to search defendant's home], the officer's statement supplied it").

These California decisions are consistent with the Ninth Circuit Court of Appeals cases that "have recognized that ' "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." ' " (*U.S. v. Pitts* (9th Cir. 1993) 6 F.3d 1366, 1369; see Brunn, Cal. Judges Benchbook: Search and Seizure (2d ed. 2002) § 2.39, p. 73.) In *U.S. v. Terry* (9th Cir. 1990) 911 F.2d 272, for example, the defendant was stopped while driving a truck that contained plastic baggies with methamphetamine, a bottle with a precursor chemical for the manufacture of methamphetamine, and $10,000 in cash. A warrant to search the defendant's home was issued based on the property found in the truck, and an officer's opinion that "methamphetamine drug traffickers keep drugs, paraphernalia, records and money in their homes or adjoining structures." (*Id.* at p. 275.) The court upheld the magistrate's finding of probable cause, citing the inference that " 'evidence is likely to be found where [drug] dealers live.' " (*Ibid.*; see also, e.g., *U.S. v. Ayers* (9th Cir. 1991) 924 F.2d 1468, 1479; *United States v. Angulo-Lopez* (9th Cir. 1986) 791 F.2d 1394, 1399.) This same inference is evidently applied in most federal circuits. (*U.S. v. Whitner* (3d Cir. 2000) 219 F.3d 289, 297-298 [listing First, Second, Fourth, Sixth, Seventh, Eighth, Ninth, and D.C. Circuit cases for the proposition that "evidence of involvement in the drug trade is likely to be found where the dealers reside"].)

The opposing approach is exemplified by the decision in *State v. Thein, supra,* 977 P.2d 582, where a search warrant was issued based on evidence that the defendant was involved in drug dealing, and an officer's opinion that drug traffickers commonly keep drug inventory and paraphernalia, large sums of money, and weapons in their homes. The Washington Supreme Court found this showing insufficient to establish probable cause to search the defendant's residence, rejecting a "per se rule that if the magistrate determines a person is probably a drug dealer, then a finding of probable cause to search that person's residence automatically follows." (*Id.* at p. 585.) The court concluded that "generalizations regarding the common habits of drug dealers" did not substitute for "specific facts linking such illegal activity to the residence searched. . . . [¶] . . . Although common sense and experience inform the inferences reasonably to be drawn from the facts, broad generalizations do not alone establish probable cause." (*Id.* at p. 589.)

██ The People ask us to extend the approach of the California and Ninth Circuit cases involving drug dealers, and uphold the search warrant herein based on the evidence that appellant was a user of illegal drugs, and the officer's opinion that drug users will keep drugs "at their residence so they always have a source to satisfy their addiction."[1] Since such an opinion or inference could be readily supplied or drawn in every case, the People are, to use the language of the *Thein* court, "[e]ssentially . . . urg[ing] us to adopt a per se rule that if the magistrate determines a person is probably a drug [user], then a finding of probable cause to search that person's residence automatically follows." (*State v. Thein, supra,* 977 P.2d at p. 585.)

We will assume that the California decisions are correct insofar as they suggest that evidence of drug dealing, by itself, can furnish probable cause to search the dealer's residence. However, we decline to adopt a corresponding rule in cases involving only drug use for a number of reasons.

First, such a rule would be contrary to all of the cases we have been able to find outside California that have dealt with or touched on the issue. One such case is *State v. Johnson* (1999) 256 Neb. 133 [589 N.W.2d 108], where the police arrested the defendant for failing to pay child support, conducted a patdown search incident to the arrest, and found methamphetamine in a vial in one of his pockets. The police searched the defendant's vehicle,

---

[1]The officer's characterization of appellant as someone involved in the "transportation," as well as use, of illegal drugs simply reflects the fact that appellant was driving with narcotics in his possession, and cannot be taken to suggest that he was engaged in drug trafficking. (See *People v. Eastman* (1993) 13 Cal.App.4th 668, 674-677 [16 Cal.Rptr.2d 608] [offense of illegal transportation includes transportation for personal use].)

which he had occupied immediately prior to his arrest, and found two small paper packet "snow seals," commonly used as containers for controlled substances, in a plastic bag. (*Id.* at p. 112.) The defendant's billfold was searched and found to contain an empty snow seal and $269.50 in cash. The arresting officer then sought a warrant to search the defendant's residence for evidence associated with drug trafficking.

The affidavit recounted the arrest and the recovery of the methamphetamine, but did not identify the quantity of the drug seized. The officer described the snow seals in the defendant's possession as an item used for the sale of controlled substances. The officer indicated that the defendant had been previously convicted of drug charges, and was known to have engaged in the use and sale of controlled substances. The officer opined that "individuals frequently keep controlled substances on their persons; as well as at their residence." (*State v. Johnson, supra,* 589 N.W.2d at p. 112.) The warrant was issued and a small quantity of cocaine was discovered in the residence, along with a triple beam scale, diazepam tablets and drug paraphernalia.

The defendant moved to suppress the evidence found in his home on the ground that the warrant was not supported by probable cause. At the hearing on the motion, the arresting officer testified that his warrant application had been based entirely upon the methamphetamine and snow seals seized in the arrest, and information from other officers that the defendant had been convicted of an unspecified drug-related offense and had served time in jail. The officer admitted that the snow seals and methamphetamine in the defendant's possession when he was arrested were consistent with either distribution or personal use. The court found no probable cause to search the residence, writing in relevant part:

"The State urges that we follow authority from other jurisdictions holding that a magistrate is entitled to draw reasonable inferences from the information in an affidavit, including the inference that drug dealers will have drugs in their homes. See, e.g., *United States v. Angulo-Lopez,* 791 F.2d 1394 (9th Cir.1986). However, a common thread among these cases is that the affidavit provided facts establishing that the defendant was a drug dealer as opposed to someone in possession of drugs for personal use. See, e.g. *U.S. v. Williams,* 974 F.2d 480 (4th Cir.1992) (affidavit clearly established that defendant was drug dealer); *Angulo-Lopez, supra* (evidence that defendant was engaged in drug trafficking); *State v. Godbersen,* 493 N.W.2d 852 (Iowa 1992) (large amount of cash and 12 baggies of marijuana were discovered in vehicle search); *State v. Bynum,* 579 N.W.2d 485 (Minn.App.1998) (defendant sold drugs from his automobile).

"In the present cases, we find nothing in the affidavit which would lead to a reasonable inference that Johnson was engaged in the sale of controlled substances at or near the time of his arrest. The general statement that [the officer] was aware of Johnson's previous conviction of 'drug charges' would not support such an inference, since there is no indication of the date of the conviction or whether it involved the sale, as opposed to possession, of controlled substances. Likewise, the fact that Johnson was in possession of an unspecified quantity of methamphetamine and three snow seals, described in the affidavit as 'an item used for the sale of controlled substances,' provides no basis for inferring that Johnson was a seller of controlled substances, rather than a purchaser. Thus, even if we were to accept the State's premise that incriminating evidence is likely to be found in the homes of drug dealers, the affidavit on its face contains no facts from which it could reasonably be inferred that Johnson was a drug dealer at or near the time of his arrest." (*State v. Johnson, supra,* 589 N.W.2d at pp. 116-117.)

In *State v. Doile* (1989) 244 Kan. 493 [769 P.2d 666], the police looked into the window of the defendant's car while it was parked outside a nightclub, and observed what appeared to be a partially burned marijuana cigarette. When the defendant left the club and drove away, the police stopped him and arrested him for possession of marijuana, driving under the influence, and driving with a suspended license. A search of the car revealed a mirror in the glove compartment and a baggie of marijuana beneath the front seat. Traces of cocaine were found on a straw inside the defendant's billfold. A warrant was issued to search the defendant's home based on an affidavit that identified the property seized in connection with the arrest, and indicated that the defendant had been convicted of selling cocaine five years earlier. The court observed that "[n]o facts were alleged indicating any current drug-related activity was occurring at the residence," and continued: "Do these facts warrant a finding of probable cause to believe defendant's residence contained marijuana, drug paraphernalia, and cocaine? We believe not." (*Id.* at p. 672.)

In *State v. Rangitsch* (1985) 40 Wash.App. 771 [700 P.2d 382], a warrant was issued to search the defendant's home and automobile based on an officer's affidavit describing evidence of the defendant's use of cocaine, and stating that "it was the experience of another trooper working in the narcotics department that cocaine users would commonly have cocaine and drug paraphernalia in their vehicles and residences." (*Id.* at p. 385.) The court found no probable cause for the search. "The affidavit in support of the search warrant must adequately show circumstances which go beyond suspicion and mere personal belief that evidence of a crime will be found on the premises to be searched. [Citations.] In the affidavit, the officer's belief that

habitual users of drugs keep drugs and paraphernalia in their home was mere speculation. It was not sufficient to establish probable cause." (*Id.* at p. 388.)

In *State v. Stephens* (1984) 37 Wash.App. 76 [678 P.2d 832, 834], a "small quantity of marijuana" in the defendant's possession at the time of his arrest was held inadequate to support a warrant for the search of the defendant's residence for evidence of controlled substance manufacturing. *State v. Bittner* (1992) 66 Wash.App. 541 [832 P.2d 529, 532], cited the *Rangitsch* and *Stephens* cases for a rule that probable cause for residential searches is not established where defendants "merely exhibited signs of drug use or carried drugs on their person at the time of their arrest."

Statements in other cases are in accord. In *Ex Parte Perry* (Ala. 2001) 814 So.2d 840, 843, the court declared that "a defendant's possession of illegal drugs does not, without more, make reasonable a search of the defendant's residence." In *State v. Souto* (Minn. 1998) 578 N.W.2d 744, 749, the court remarked that the defendant's "previous use and purchase of a controlled substance at locations removed from her house certainly were evidence of a crime, but no evidence whatsoever of criminal activity linked to her home." In *State of Texas v. Gonzales* (5th Cir. 1968) 388 F.2d 145, 148, the fact that a person "had admitted that he was a narcotics user did not provide probable cause for believing that the narcotics were present in his house on the night of the search." (See also *State v. Franklin* (Iowa Ct.App. 1997) 564 N.W.2d 440, 443-444 [an "arrest with cocaine does not provide probable cause to search [the suspect's] residence," citing *United States v. Stout* (N.D.Cal. 1986) 641 F.Supp. 1074, 1078-1079]; *State v. Howard* (Fla.Dist.Ct.App. 1996) 666 So.2d 592, 595 [affidavit stating that defendant had been seen in possession of drugs was insufficient to support search of defendant's home, citing *Getreu v. State* (Fla.Dist.Ct.App. 1991) 578 So.2d 412].)

Some of the cases inferring that evidence of drug dealing is likely to be found in the dealer's home have noted that the defendant was "involved in selling drugs, rather than merely using them." (*U.S. v. Whitner, supra*, 219 F.3d at p. 298; see also *U.S. v. Burton* (3d Cir. 2002) 288 F.3d 91, 104; *U.S. v. Hodge* (3d Cir. 2001) 246 F.3d 301, 306.) The negative implication of these decisions is that an inference of possession in the home would not necessarily arise in the case of a drug user.

Thus, while the issue has seldom been squarely presented, there is a significant body of reasoning to the effect that suspected drug use does not alone provide probable cause to search the user's residence. On the other hand, we have found no authority for a contrary conclusion.

A second reason for rejecting the argument for probable cause herein is that the drug trafficking cases on which it is based are distinguishable. The

distinction was drawn in *State v. Gross* (1990) 57 Wash.App. 549 [789 P.2d 317, 320], on the grounds that "(1) drug trafficking is a much greater evil than drug use, increasing the governmental justification to search, and (2) if the homes of drug users could be searched as readily as the homes of drug traffickers, a much greater invasion of privacy would result." We would add that an inference of contraband in the home is more speculative in the case of drug users than drug traffickers. Prospects for contraband are greater in the case of traffickers, given the larger quantities of drugs and the additional items of property typically involved, such as customer lists, sales records, manufacturing equipment and materials, packaging, scales, weapons, large amounts of cash, etc. (E.g., *People v. Gallegos* (2002) 96 Cal.App.4th 612, 629 [117 Cal.Rptr.2d 375]; *People v. Stone* (1999) 75 Cal.App.4th 707, 711-712 [89 Cal.Rptr.2d 401].) Thus, while conclusory affidavits may establish probable cause for residential searches in cases of drug trafficking, we are not persuaded of their sufficiency in cases of drug use. (See *People v. Superior Court* (1972) 6 Cal.3d 704, 711 [100 Cal.Rptr. 319, 493 P.2d 1183] [conclusory affidavits are generally inadequate].)

Third, although "doubtful or marginal cases are to be resolved with a preference for upholding a search under a warrant" (*People v. Mikesell* (1996) 46 Cal.App.4th 1711, 1719 [54 Cal.Rptr.2d 708]), we must be mindful of the "right of residential privacy at the core of the Fourth Amendment" (*Wilson v. Layne* (1999) 526 U.S. 603, 612 [119 S.Ct. 1692, 1698, 143 L.Ed.2d 818]). The central importance of privacy in the home has been emphasized in many cases. (E.g., *Payton v. New York* (1980) 445 U.S. 573, 589 [100 S.Ct. 1371, 1381-1382, 63 L.Ed.2d 639] [in no setting is "zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home"]; *United States v. Martinez-Fuerte* (1976) 428 U.S. 543, 561 [96 S.Ct. 3074, 3084, 49 L.Ed.2d 1116] [acknowledging the "sanctity of private dwellings, ordinarily afforded the most stringent Fourth Amendment protection"]; *People v. Camacho* (2000) 23 Cal.4th 824, 831 [98 Cal.Rptr.2d 232, 3 P.3d 878], and cases cited.) ▮ "The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" (*United States v. Knights* (2001) 534 U.S. 112, 118-119 [122 S.Ct. 587, 591, 151 L.Ed.2d 497].) Here, little argument and no persuasive justification has been offered for a new rule that would potentially open the door to a vast number of residential intrusions.

Fourth, to substitute the proposed generalization for case-specific analysis would be contrary to the weight of Fourth Amendment precedent generally

(1 LaFave et al., Criminal Procedure (2d ed. 1999) § 2.9(d), pp. 663-664, fn. 163 [most decisions have declined to adopt bright-line standards; collecting cases]), and authority on the issue of probable cause in particular (*Illinois v. Gates, supra,* 462 U.S. at p. 232 [103 S.Ct. at p. 2329] [concept of probable cause is "not readily, or even usefully, reduced to a neat set of legal rules"]).

■ Probable cause for issuance of search warrant is a "commonsense, practical question" (*id.* at p. 230 [103 S.Ct. at p. 2328]), and there may be some reason to suspect that "everyone engaged in criminal activity (drugs or otherwise), keeps evidence of the criminal activity at home" (*State v. Ward* (2000) 231 Wis.2d 723 [604 N.W.2d 517] (dis. opn. of Abrahamson, C. J.).) However, such reasoning would "swallow[] the Fourth Amendment require-ment that applications for warrants must demonstrate reasonable grounds to believe that the item to be seized will be found in the place specified to be searched. 'If a per se exception were allowed for each category,' the Fourth Amendment requirement that a warrant application must demonstrate rea-sonable grounds to believe that the item to be seized will be found in the place to be searched 'would be meaningless.' " (*Ibid.,* quoting *Richards v. Wisconsin* (1997) 520 U.S. 385, 394 [117 S.Ct. 1416, 1421, 137 L.Ed.2d 615].)

■ Accordingly, we conclude that probable cause to search the resi-dence of someone suspected of using illegal drugs requires more than an opinion or inference, available in every case, that drugs are likely to be present. This does not mean that probable cause to search a home could never arise from the particularized suspicions of an experienced narcotics officer, or the circumstances of an arrest for drug possession, only that illegal drug use does not necessarily provide probable cause to search the user's residence, and that such cases must be decided on their own facts. (See *Illinois v. Gates, supra,* 462 U.S. at p. 238 [103 S.Ct. at p. 2332] [reaffirming "the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations"].)

B. *Good Faith*

■ The question remains whether denial of the motion to suppress must be upheld under the "good faith" exception to the exclusionary rule applicable where a search has been conducted "in objectively reasonable reliance on a subsequently invalidated search warrant." (*United States v. Leon* (1984) 468 U.S. 897, 922 [104 S.Ct. 3405, 3420, 82 L.Ed.2d 677].) Appellant contends that the affidavit in this case was " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unrea-sonable.' " (*Id.* at p. 923 [104 S.Ct. at p. 3421].) The question is whether "a well-trained officer should reasonably have *known* that the affidavit failed to establish probable cause (and hence that the officer should not have sought

a warrant)." *(People v. Camarella, supra,* 54 Cal.3d at p. 596.) An officer applying for a warrant must exercise reasonable professional judgment and have a reasonable knowledge of what the law prohibits. *(Id.* at p. 604; *United States v. Leon, supra,* at p. 920, fn. 20 [104 S.Ct. at p. 3419].) If the officer "reasonably could have believed that the affidavit presented a close or debatable question on the issue of probable cause," the seized evidence need not be suppressed. *(People v. Camarella, supra,* at p. 606; compare *People v. Romero* (1996) 43 Cal.App.4th 440, 447 [51 Cal.Rptr.2d 26], with *People v. Hernandez* (1994) 30 Cal.App.4th 919, 924 [35 Cal.Rptr.2d 916].)

 In view of the "numerous cases [holding that] if there was probable cause to believe the defendant was dealing drugs there was probable cause to believe drugs or other evidence of such criminal activity would be found in defendant's residence" *(People v. Tuadles, supra,* 7 Cal.App.4th at pp. 1788-1789 (conc. opn. of Johnson, J.)), it was probably just a matter of time before a similar claim was made with respect to drug users. Relatively few cases, and none from California, have considered whether the inference of contraband in the residence that has been drawn against drug traffickers can also be drawn against drug users. The inferences are arguably analogous. Given the dearth of authority directly on point and the existence of potentially supportive precedent, the issue of probable cause was "debatable" when the warrant herein was sought, even though the issue, upon examination, is not a particularly close one. Therefore, the officer could reasonably rely on the magistrate's finding of probable cause, and suppression of the fruits of the search is not required. *(People v. Camarella, supra,* 54 Cal.3d at p. 606; *U.S. v. Hyppolite* (4th Cir. 1995) 65 F.3d 1151, 1158 [because "the law was unclear . . . an objectively reasonable officer could have relied on the magistrate's determination of probable cause"]; *U.S. v. McGrew* (9th Cir. 1997) 122 F.3d 847, 850, fn. 5 [no good faith where the law had been "clear . . . for over a decade, foreclosing any 'reasonable belief' to the contrary"].) However, future warrant applications will have to account for our decision in this case.

## III. DISPOSITION

The judgment is affirmed.

Reardon, J., and Rivera, J., concurred.