# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73420-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY MARK YOUNGS, | ) | PUBLISHED |
| | ) | |
| Appellant. | ) | FILED: July 3, 2017 |
| | ) | |

Cox, J. — The issue here is whether the magistrate issuing the warrant for a blood draw had sufficient facts to make an independent decision that probable cause supported the draw of Anthony Youngs's blood. We hold that the affidavit is insufficient for this purpose. Accordingly, we reverse and remand for further proceedings in the district court.

In the early morning hours of May 15, 2013, a magistrate issued a warrant authorizing the withdrawal of a blood sample from Youngs. A state patrol trooper had arrested Youngs on suspicion of driving while under the influence of intoxicants. The magistrate issued the warrant based on the Affidavit in Support of Search Warrant for Evidence of a Crime, to wit: Driving While Under the

Influence, RCW 46.61.502 dated May 15, 2013.[1] This affidavit is a largely preprinted form to which the affiant may add information.

Following the blood draw, the State charged Youngs with driving while under the influence, contrary to RCW 46.61.502. Youngs moved to suppress evidence obtained under authority of the warrant. The district court denied the motion. Youngs then agreed to a stipulated bench trial based on the police report and blood alcohol report. The district court found Youngs guilty and sentenced him.

Youngs sought review in the superior court. The RALJ court affirmed based on the content in the state trooper's affidavit.

We granted Youngs's motion for discretionary review of the RALJ court's decision.

## PROBABLE CAUSE

The question is whether the trooper's affidavit contains sufficient facts for a magistrate to make an independent decision whether probable cause supported issuance of this warrant. The State argues that the affidavit is sufficient when read in a commonsense manner. Youngs disagrees. We agree with Youngs.

A magistrate may only issue a search warrant upon probable cause.[2] The warrant must be supported by an affidavit identifying the place to be searched

---

[1] Clerk's Papers at 40-43.

[2] State v. Clark, 143 Wn.2d 731, 747, 24 P.3d 1006 (2001).

and the items to be seized.[3] The affidavit must contain sufficient facts to convince an ordinary person that the defendant is probably engaged in criminal activity.[4]

This court evaluates the relevant affidavit "'in a commonsense manner, rather than hypertechnically, and any doubts are resolved in favor of the warrant.'"[5] Thus, a "negligen[t] or innocent mistake" in drafting the affidavit will not void it.[6] And the magistrate may draw reasonable inferences from the stated facts.[7]

But inferences alone, without an otherwise "substantial basis" of facts are insufficient.[8] The magistrate must have acted in a "'neutral and detached' function" rather than serving as a "rubber stamp" for positions advanced by law enforcement.[9]

We normally review for abuse of discretion the issuance of a search warrant.[10] But because the superior court at a suppression hearing "acts in an

---

[3] In the Matter of the Search Warrant for 13811 Highway 99, Lynnwood, Wash., 194 Wn. App. 365, 378, 378 P.3d 568 (2016).

[4] Id.

[5] Id. (quoting State v. Lyons, 174 Wn.2d 354, 360, 275 P.3d 314 (2012)).

[6] In re Yim, 139 Wn.2d 581, 597, 989 P.2d 512 (1999) (internal quotations omitted).

[7] Id. at 596.

[8] Lyons, 174 Wn.2d at 363.

[9] Id. at 360 (internal quotation marks omitted) (quoting Aguilar v. Texas, 378 U.S. 108, 111, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964)).

[10] State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008).

appellate-like capacity," we review de novo its decision on the validity of a search warrant.[11] In reviewing the warrant and affidavit, this court only considers "information before the magistrate at the time the warrant was issued."[12]

The facts alleged must not be conclusory. The affidavit may provide summary statements so long as it also expresses the facts and circumstances underlying that summary. State v. Stephens[13] and State v. Lyons[14] are instructive in this regard.

In Stephens, James Stephens was convicted of manufacturing a controlled substance, namely growing marijuana.[15] On appeal, he argued that evidence procured under the warrant to search his residence and vehicle should have been suppressed.[16] Specifically, he challenged the sufficiency of the supporting affidavit.[17]

Police officers already knew a marijuana patch existed nearby that had gone unwatered for some time.[18] They set up a stakeout during which they

---

[11] Id.

[12] State v. Stephens, 37 Wn. App. 76, 80, 678 P.2d 832, review denied, 101 Wn.2d 1025 (1984).

[13] 37 Wn. App. 76, 678 P.2d 832 (1984).

[14] 174 Wn.2d 354, 275 P.3d 314 (2012).

[15] 37 Wn. App. at 78.

[16] Id.

[17] Id.

[18] Id. at 77.

4

observed Stephens ride a motorcycle towards the area.[19] But it later became clear that from their position, they could not see the marijuana patch or Stephens.[20] They heard the motorcycle roll away and they returned to the site to find that the plants had been watered.[21]

In an affidavit, one officer declared that he had "observed" Stephens water the plant.[22] The affidavit did not describe how this was so. Division Three of this court analyzed this statement and held it insufficient.[23]

The court determined that the word 'observed' could constitute a "1-word summation of facts known to the officer."[24] As such, the statement was conclusory.[25] Although this might have been innocent "neglect[]," the court found that it still "usurped the function of the detached and impartial magistrate."[26] Thus, the court concluded that the facts and circumstances underlying this conclusory summation should have been listed in the affidavit and, without them, such a statement was insufficient to support probable cause.[27]

---

[19] Id.

[20] Id.

[21] Id.

[22] Id. at 78.

[23] Id. at 79.

[24] Id.

[25] Id. at 79-80.

[26] Id. at 80.

[27] Id.

Lyons[28] is also instructive. There, police obtained and executed a search warrant upon Patrick Lyons based on a confidential informant's reported observation that marijuana was growing indoors at Lyons's residence.[29] The affidavit stated that police received the tip "[w]ithin the last 48 hours."[30]

Upon review, the supreme court found it ambiguous whether the "[w]ithin the last 48 hours" referred solely to when police received the tip or also to when the informant observed the marijuana.[31] The State argued that the affidavit, properly read, alleged both events occurred within that timeframe.[32] But the court concluded that was logically impossible. "There was necessarily a time gap between the observation and the contact."[33] Such drafting made it "impossible for a neutral magistrate" to determine the extent of that gap and whether the informant's tip had gone stale.[34]

The relevant allegations in an affidavit must also be specific to the facts of the case and not require that the magistrate rely upon the police officer's

---

[28] 174 Wn.2d 354.

[29] Id. at 357.

[30] Id.

[31] Id. at 363.

[32] Id.

[33] Id.

[34] Id.

expertise regarding general criminal behavior. State v. Thein[35] is helpful in this regard.

Police investigated Stephen Thein for possessing marijuana with intent to deliver.[36] In the course of that investigation, they applied for a warrant to search Thein's home.[37] They attached two affidavits of probable cause to the application.[38]

These affidavits both contained "generalized statements of belief regarding the common habits of drug dealers" in order to draw a nexus between Thein, the alleged drug dealer, and his residence.[39] These statements rested entirely on the affiant officer's "experience and training, as well as the corporate knowledge and experience of other fellow law enforcement officers" as to the general practice of drug dealers.[40]

The supreme court held these statements insufficient to support probable cause.[41] To conclude otherwise, it suggested, would amount to a per se rule automatically establishing probable cause to search the residence of any person

---

[35] 138 Wn.2d 133, 977 P.2d 582 (1999).

[36] Id. at 136.

[37] Id.

[38] Id.

[39] Id. at 138.

[40] Id. at 138-39.

[41] Id. at 151.

found to likely be a drug dealer.[42] Instead of just "general conclusions" and "[b]lanket inferences," the court explained that "specific facts" were necessary.[43] Only then could the magistrate draw reasonable inferences, not from generalities, but from specific facts in the affidavit.[44] Thus, the warrant was insufficient.[45]

Here, we focus on the affidavit that was before the magistrate and the RALJ court. It is a largely preprinted form to which there are typed insertions. We presume the state patrol trooper added these insertions. Material portions of this affidavit follow.

Both the face page of the affidavit and its second page state that the alleged traffic infraction for which the warrant was sought was "Driving While Under the Influence, RCW 46.61.502."[46] Notably, the boxes on both of these pages that are next to the text stating "Physical Control of Vehicle While Under the Influence, RCW 46.61.504" were left unchecked by the state patrol trooper.[47]

The next material provision in this affidavit states that the trooper based his belief:

> upon information acquired through personal interviews with
> witnesses and other law enforcement officers, review of reports and

---

[42] Id. at 141.

[43] Id. at 145, 147.

[44] Id. at 149.

[45] Id. at 151.

[46] Clerk's Papers at 40-41.

[47] Id.

personal observations, said information being as further described herein—

. . . .

I was trained at the Washington State Patrol Academy; I received extensive training in the detection and recognition of DUI's, including a wet lab. I have worked on my own for approximately 2 years and have arrested about 100 DUI drivers.[48]

The trooper next states the following regarding "the initial contact" with Youngs:

"[Youngs] was involved in a one car rollover collision. He was transported to Evergreen Hospital."[49]

The trooper states the following additional factual information:

A sample of _Anthony Youngs_'s blood, if extracted within a reasonable period of time after he/she last operated, or was in physical control of, a motor vehicle, may be tested to determine his/her current blood alcohol level and to detect the presence of any drugs that may have impaired his/her ability to drive. This search warrant is being requested _2_ hours _15_ minutes after _Anthony Youngs_ ceased driving/was found in physical control of a motor vehicle.[50]

Youngs does not challenge the sufficiency of the affidavit that states facts why the trooper believed that Youngs was under the influence of intoxicants and/or drugs. That portion of the affidavit states:

The facts supporting my belief that _Anthony Youngs_ is under the influence of intoxicants and/or drugs are as follows:

Heavy odor of intoxicants on his breath and person, Anthony admitted to having approximately four beers. I observed his eyes to be bloodshot and watery. I observed his speech to be slurred

---

[48] Id. at 41.

[49] Id.

[50] Id. at 42.

and hard to understand at times. I observed 6 of 6 clues on the horizontal gaze nystagmus test. Anthony was strapped to a backboard and therefore unable to perform further certified tests. Anthony provided a PBT sample of .114.[51]

Accordingly, we focus, as do the parties, on whether there are sufficient facts to establish that Youngs was driving the car involved in the "one car rollover collision."[52]

First, the affidavit states that Youngs "was involved in a one car rollover collision. He was transported to Evergreen Hospital."[53] This statement fails to tell us whether Youngs was driving, as he correctly argues in his brief. It is like the statements in Stephens and Lyons. Like in Stephens, it is merely a "summation of facts known to the officer."[54] And like in Lyons, it fails to specify important details. For example, it leaves unexplained how he was "involved." If he was observed driving, the affidavit could say so and explain the facts supporting that statement. But it does not.

The RALJ court appears to have recognized these shortcomings. It presumed that an officer would not have done a breath test and other sobriety tests on a pedestrian. It presumed an officer might have done so on a passenger. The court also cited the undisputed symptoms of Youngs's intoxication that we stated previously in this opinion.

---

[51] Id. at 41.

[52] Id.

[53] Id.

[54] 37 Wn. App. at 79.

10

But these presumptions do little to assist us in determining whether the affidavit contains sufficient facts to allow a magistrate to make an independent decision whether probable cause exists to show Youngs was driving. Rather, the affidavit must have sufficient facts to support such a determination underlying probable cause. This affidavit lacks such facts.

Second, the affidavit also states, in largely preprinted text, when the search warrant was being requested in relation to certain matters. Specifically, it states it was "being requested __2__ hours __15__ minutes after __Anthony Youngs__ ceased driving/*was found in physical control of a motor vehicle.*"[55]

The RALJ court concluded that the "was found in physical control of a motor vehicle" text that follows "ceased driving/" was a "factual statement as opposed to a conclusion of law" by the state trooper.[56] The RALJ court combined this "factual statement" with another statement in the affidavit, that Youngs "was involved in a one car rollover collision."[57] In doing so, the RALJ court concluded that the magistrate properly determined there was probable cause.[58] Based on this, the RALJ court affirmed the conviction and remanded to the district court for further proceedings.[59]

---

[55] Clerk's Papers at 42 (emphasis added).

[56] Id. at 4.

[57] Id. at 41.

[58] Id. at 7 (emphasis added).

[59] Id. at 8 (emphasis added).

11

One problem with this approach to this affidavit is that the preprinted language in the form—"ceased driving/was found in physical control of a motor vehicle"—suggests that it is intended to apply to two different crimes. One crime is "*Driving* While Under the Influence, RCW 46.61.502."[60] The other is "*Physical Control* of Vehicle While Under the Influence, RCW 46.61.504."[61] We say this because this is the most natural and commonsense reading of this affidavit as a whole.

But when we consider these two different phrases in conjunction with the face page and the second page of this affidavit, both of which state the alleged infraction was "*driving* while under the influence," we must conclude that the state trooper did not intend the "*physical control*" text to apply to this case. There is nothing that we see in the affidavit that would suggest this latter intent.

But even if we assume that the RALJ court correctly concluded that the "*physical control*" text was a factual statement, we must disagree with the court's conclusion. This statement is still conclusory, as in Stephens and the other cases we have discussed.

Unlike the act of driving, which may be readily observed, "physical control" is a conclusion drawn from other facts. For example, a police officer may reach this conclusion based on the defendant's proximity to the vehicle, possession of keys to it, or similar observable circumstances. Because the magistrate must

---

[60] Id. at 40 (emphasis added).

[61] Id. (emphasis added).

12

*independently* determine whether probable cause exists, he or she cannot simply accept such a conclusion without supporting allegations.

Thus, the statements in the affidavit are conclusory, general, and insufficient to support probable cause that Youngs was driving the vehicle.

The State argues that the trooper negligently but innocently omitted a detailed factual basis for its conclusions that Youngs was driving. It relies on In re Personal Restraint of Yim.[62] Its reliance is misplaced.

That companion case in the Yim decision concerned the sufficiency of an affidavit supporting a search warrant for the home and vehicles of Donald and Penny Yokley.[63] The State had charged Donald with the unlicensed sale of explosives.[64]

The affidavit stated that Donald was under investigation for "Illegal Possession of Explosive Devices."[65] It detailed how an undercover police officer had placed an order for $7,000 of "illegal explosive devices."[66] After the officer placed the order, Donald was seen taking a plastic bag and white box from his apartment to his car, and driving to his wife's workplace to switch cars, before proceeding to a pickup spot arranged with the undercover officer.[67] There, he

---

[62] 139 Wn.2d 581, 989 P.2d 512 (1999).

[63] Id. at 587.

[64] Id. at 584.

[65] Id. at 595.

[66] Id.

[67] Id. at 595-96.

exchanged the boxes with the officer for $7,000, expressing his hurry and nervousness.[68] He was arrested there.[69]

Donald contested the sufficiency of the supporting affidavit for the warrant because it did not "specifically state that Donald Yokley did not possess an explosives license."[70] But the other facts presented in the affidavit, the court reasoned, allowed the magistrate to "easily draw this inference."[71]

This case is different. Whereas the police in Yim omitted a single, if important fact, they alleged a detailed narrative showing the illicit possession and sale of explosives to an undercover police officer. An innocent explanation for these facts would be implausible. By contrast, the affidavit in this case states that Youngs was intoxicated, was "involved in a car accident," and taken to a hospital. What is missing is any showing that he was driving. Thus, the State's reliance on Yim is misplaced.

To summarize, this affidavit is insufficient to allow a magistrate to make an independent determination whether probable cause of *driving* under the influence of intoxicants existed to support a warrant for a blood draw. To be clear, the fault is not in the use of a largely preprinted form. Rather, it is the lack of sufficient factual information in the completed form to establish probable cause for the issuance of a warrant. For example, the factual information concerning

---

[68] Id. at 596.

[69] Id.

[70] Id. at 597.

[71] Id.

14

intoxication is sufficient and unchallenged in this case. But the factual information to establish driving is insufficient.

We reverse and remand to the district court with directions to suppress the evidence obtained by the warrant and for such further proceedings that are not inconsistent with this opinion.

_Cox, J._

WE CONCUR:

_Trickey, J_

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 JUL -3 AM 9:19