IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>v.<br><br>TACEY LYNN SMITH,<br><br>               Appellant. | No. 77933-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: April 15, 2019 |

CHUN, J. — Tacey Smith lost control of her car and collided with two other vehicles. A paramedic transported her to the hospital. The police observed signs of intoxication and obtained a search warrant for a blood draw. Blood tests revealed a blood alcohol content (BAC) of 0.13 and 4.0 nanograms of THC.[1] A jury convicted Smith of vehicular assault.

On appeal, Smith claims a lack of probable cause to support the search warrant authorizing the blood draw. She says the warrant declaration failed to state the basis for the Trooper's knowledge that she had been driving. Smith additionally challenges the trial court's imposition of a $200 criminal filing fee. We remand the judgment and sentence to strike the criminal filing fee, but otherwise affirm.

---

[1] Tetrahydrocannabinol (THC) acts as the intoxicating chemical in marijuana.

I.
## BACKGROUND

On July 2, 2015, several witnesses observed a motor vehicle accident on State Route (SR) 525[2] when a white car traveling south in the right lane hit a truck. The car then skidded and flipped over the median, colliding with a red SUV traveling north on SR 525.

Eric Anderson, a firefighter paramedic, arrived at the accident scene. Anderson approached the white vehicle and saw a barely-conscious female driver "slumped" over. Anderson identified the driver as Smith. He transported Smith to Providence Hospital.

Trooper Christopher Hooper went to the hospital to see Smith. When he spoke with her, he could smell intoxicants and observed horizontal gaze nystagmus (HGN), an "involuntary jerkiness" of the eyes that can result from alcohol consumption. He further saw she had bloodshot eyes.

Based on these observations, Trooper Hooper sought a warrant for Smith's blood. His declaration alleged as follows:

> **Smith was traveling southbound on SR 525 in lane 2 of 2 at SR 99. Smith rear ended the vehicle in front of her and lost control traveling over the raised curbing (island) and colliding head on with a vehicle in lane 2 of 2 of northbound SR 525.**
>
> The facts supporting my belief that **Smith, Tacey L** is under the influence of intoxicating liquor, marijuana, or any drug and/or is affected by intoxicating liquor, marijuana or any drug are as follows:
>
> Smith was transported to Providence Colby Hospital for her injuries. I contacted Smith who has been consistently treated by medical staff. Smith has injuries to her ankle and possibly her hip. . . . I have been

---

[2] SR 525 consists of four lanes with two lanes traveling north and two traveling south. A low, concrete median separates the northbound and southbound lanes.

unable to speak to Smith face to face due to her being constantly treated. To this point no medications have been given to Smith.

The driver of the vehicle that Smith collided with head on was transported to Harborview, unknown at this time the extent of the injuries.

Once Smith was back from CAT Scan and X-Ray I was able to speak to her. Smith has the odor of intoxicants coming from breath and her eyes are bloodshot. When Smith looked at me, to the left I could see obvious HGN.

The declaration additionally stated Trooper Hooper based his beliefs "upon information acquired through personal interviews with witnesses and other law enforcement officers, review of reports and personal observations."

A district court judge reviewed the search warrant and declaration and found "probable cause that evidence of the crime of DUI will be found in the blood of Ms. Smith." Later testing of the blood sample revealed a BAC of 0.13 and 4.0 nanograms of THC.

On October 12, 2016, the State charged Smith with one count of vehicular assault.

On October 17, 2017, Smith moved to suppress the results of the blood tests. Smith argued the warrant failed to establish probable cause for a blood sample because the declaration contained merely a conclusory statement that she acted as a driver.

The court deemed the declaration factually sufficient to show Smith had been driving. As such, it denied the motion to suppress.

Smith proceeded to trial and the jury found her guilty. The court sentenced Smith to 11 months of confinement and imposed a $200 criminal filing fee. She appeals.

## II.
## ANALYSIS

A court may issue a search warrant only upon a showing of probable cause. State v. Youngs, 199 Wn. App. 472, 475, 400 P.3d 1265 (2017). The affidavit or declaration supporting a warrant "must contain sufficient facts to convince an ordinary person that the defendant is probably engaged in criminal activity." Youngs, 199 Wn. App. at 475.

When deciding whether to issue a search warrant, courts must follow the fundamental principle that "the determination of probable cause must be made by a magistrate based on the facts presented to the magistrate, instead of being made by police officers in the field." State v. Lyons, 174 Wn.2d 354, 360, 275 P.3d 314 (2012). Thus, conclusory statements alone may not support a search warrant. State v. Stephens, 37 Wn. App. 76, 79, 678 P.2d 832 (1984). The court, however, may draw reasonable inferences from the facts provided in the affidavit or declaration. Youngs, 199 Wn. App. at 476.

"[A]t [a] suppression hearing the trial court acts in an appellate-like capacity." State v. Neth, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). Therefore, appellate courts review de novo a trial court's assessment of probable cause. Neth, 165 Wn.2d at 182. We additionally limit our review to the four corners of the declaration supporting probable cause. Neth, 165 Wn.2d at 182.

Here, Smith challenges the declaration supporting the search warrant for a blood draw because it "failed to state a sufficient factual basis for [Trooper Hooper's] belief that Smith was driving." We uphold the warrant.

Smith compares her case favorably with Youngs, in which a magistrate issued a warrant for a blood draw pursuant to an affidavit providing that the defendant "was involved" in a car accident and an officer had subjected him to sobriety tests. Youngs, 199 Wn. App. at 481-82. However, the affidavit failed to explain how the vehicular accident had involved the defendant. Because the affidavit failed to provide "sufficient facts to allow a magistrate to make an independent decision whether probable cause exist[ed] to show [the defendant] was driving," this court deemed the warrant invalid. Youngs, 199 Wn. App. at 482.

In contrast, here, as Smith concedes, "the [declaration] sufficiently alleged Smith was driving at the time of the collision." She argues, however, the warrant nevertheless lacked probable cause because the declaration "does not state the basis for Trooper Hooper's knowledge that Smith was driving at the time of the collision." We determine the case law does not require such detail.

"Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place" in the evaluation of search warrant affidavits or declarations. State v. Patterson, 83 Wn.2d 49, 54, 515 P.2d 496 (1973). Where the affiant has detailed the circumstances underlying the affidavit and credited the source of the information and a judge has found probable cause, "the courts should not invalidate the warrant by interpreting the affidavit in

a hypertechnical, rather than a commonsense, manner." Patterson, 83 Wn.2d at 54-55.

The declaration in this case provided details of the motor vehicle accident underlying the search warrant. It specified Smith had been driving and lost control of her vehicle, resulting in the collisions. Trooper Hooper further stated that he based the facts stated in the declaration "upon information acquired through personal interviews with witnesses and other law enforcement officers, review of reports and personal observations." That this line constituted part of a pre-printed form does not render it insufficient as an explanation of the basis of Trooper Hooper's statements. See Youngs, 199 Wn. App. at 485 (noting law enforcement may use preprinted forms for search warrant affidavits). The information enabled the judge to independently determine whether probable cause existed and we will not engage in a "microscopic examination" of the warrant to invalidate it. See Patterson, 83 Wn.2d at 54-55. The trial court did not err in upholding the warrant.

Lastly, Smith asks this court to strike the $200 criminal filing fee imposed in her sentence. Under State v. Ramirez, a trial court may not impose a criminal filing fee on an indigent criminal defendant. 191 Wn.2d 732, 739, 426 P.3d 714 (2018). Here, Smith claimed indigency and requested the court appoint an attorney and allow her to seek appellate review at public expense. The motion provided that she did not have a job, an income, or any assets. The court found her indigent and granted the motion. This sufficiently demonstrates Smith's indigency at the time of sentencing.

We remand to the trial court to strike the criminal filing fee from Smith's judgment and sentence, and affirm in all other respects.

_Chun, J._

WE CONCUR:

_Andrus, J._          _Schindler, J._

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2019 APR 15 AM 11: 27