[No. 26689-6-I.    Division One.    July 20, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. BRADLEY
BITTNER, ET AL, *Appellants.*

*Richard Brent Daniel,* for appellants.

*William Hawkins, Prosecuting Attorney,* and *Peter Strow,
Deputy,* for respondent.

COLEMAN, J. — Bradley Bittner and Linda Groves appeal
the trial court's judgments and sentences for violations of
the Uniform Controlled Substances Act, contending that the
trial court erred in admitting evidence obtained during the
execution of a search warrant. We reverse.

On November 11, 1988, Detective John Robertson of the Island County Sheriff's Department presented an affidavit for a search warrant to a judge of the Superior Court for Island County. The affidavit stated in relevant part:

> Your affiant spoke via telephone at 1700 11-8-88, with a concerned south county citizen, reporting an observed drug transaction/use . . . being conducted out of a south county residence in the Cascade View development. . . . The concerned citizen is NOT a regular police informant, or a paid police informant, and has not previously contacted this office, or any other police entity that your affiant is aware. The concerned citizen has disclosed to your affiant certain drug transaction information, but wishes that the identity of the concerned citizen be known only to your affiant. . . . [A]nonymity is requested because the concerned citizen fears swift and sure retribution from the suspect parties.
>
> Your affiant has conducted a thorough criminal records check on the concerned citizen with negative results; . . .
>
> The concerned citizen is a long-standing member of the community (approximately 20 years), is employed by a major corporation, and has family in the area that have also been in the community for the past twenty years.
>
> Within the past week the concerned citizen was with a friend, and while out with that friend, the friend made a stop at a residence in the Cascade View development. The friend entered the suspect residence and came out a couple of minutes later and told the concerned citizen "I got some shit." The concerned citizen asked what his friend meant and the friend stated, "You know, coke." . . . The concerned citizen observed the friend divide the suspected cocaine into "lines" in the bathroom[.] Immediately thereafter the concerned citizen heard loud nasal inhalation (snorting) sounds emanating from the bathroom. The concerned citizen merely wishes to do the "concerned citizens" part in stemming the flow of illegal drugs within the concerned citizen's community.
>
> The concerned citizen accompanied your affiant to the suspect's residence area and showed your affiant the suspect's residence . . . Your affiant observed a white colored MGB convertible vehicle, . . . and the concerned citizen confirmed that the vehicle belonged to Brad Bittner, a subject known to the concerned citizen.

Based on the information contained in the affidavit, the judge determined that there was probable cause to believe that controlled substances were being used or sold at 6895 Saska Drive, Clinton, Washington, and issued a search warrant.

That same evening Island County sheriff's deputies executed the search warrant at the home of Brad Bittner and Linda Groves. During their search the deputies seized cocaine and marijuana paraphernalia, documents, a small amount of marijuana, and .8 grams of cocaine. Bittner and Groves were arrested.

Ten days later, Kelly Tregellas admitted that he was the "concerned citizen" referred to in the affidavit for a search warrant and gave a statement which contradicted the information contained within it. Tregellas stated that the affidavit's characterization of him as a concerned citizen wishing to stem the flow of illegal drugs was far from the truth and alleged that he had cooperated only because he had been threatened by Detective Robertson with prosecution for intimidating a federal witness and impersonating a police officer. In addition, Tregellas stated that at the time of the affidavit he was unemployed and that Robertson was aware of it, that he had a prior criminal record of reckless driving and driving while intoxicated, and that he had previously contacted the police to discuss his impersonation of a police officer. Tregellas also claimed that the incident that occurred when he waited outside the Bittner home actually took place 3 or 4 weeks prior to the date of the affidavit and that he had participated in the drug use and had paid for the drugs. Finally, Tregellas stated that he did not know Brad Bittner, had no reason to fear Bittner, and had never accompanied Detective Robertson to Bittner's house. Finding that the Tregellas statement made a preliminary showing that the affidavit for a search warrant contained materially false statements, either recklessly or intentionally made, the Superior Court conducted a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978).

During the *Franks* hearing, the court received extensive testimony from both Kelly Tregellas and Detective Robertson, the officer who took Tregellas's statement concerning his impersonation of a police officer and who prepared the affidavit in support of a search warrant. Consistent with his

earlier statement, Tregellas testified that the affidavit contained false statements and omitted material facts. In contrast, Detective Robertson testified that at the time of the affidavit he did not know that Tregellas was unemployed, did not know that Tregellas had paid for and used the drugs obtained from Bittner, and did not know that Tregellas had a prior record of DWI and reckless driving. Robertson testified that the other information contained in the affidavit was true.

After weighing the parties' conflicting testimony, the court concluded that Tregellas was not a credible witness. The court found that Robertson was unaware that some of the information in the affidavit was false and, in addition, found that the remaining statements in the affidavit were not false. Although Tregellas alleged that the affidavit for a search warrant contained the false statement that he had "not previously contacted this office, or any other police entity that your affiant is aware", the court was unpersuaded. Even though Tregellas had recently contacted the police to discuss his impersonation of a police officer, the court found that the statement was correct in the context in which it was made because Tregellas had not previously contacted the police specifically to offer drug information.

The court concluded "that the defendants have failed to meet their burden of proving by a preponderance of the evidence that the application for search warrant . . . contained any reckless or intentional misstatements or omissions of material fact which affected the finding of probable cause." Thus, the court held that the search warrant affidavit established probable cause and was valid and that the evidence obtained during the execution of the search warrant was admissible.

Subsequently, Bittner and Groves were convicted of violations of the Uniform Controlled Substances Act, and they appeal. Assuming, arguendo, that the affidavit contains no misrepresentations or material omissions, Bittner and Groves contend that the affidavit on its face is inadequate to establish probable cause. Should this argument fail, Bitt-

ner and Groves contend that after the misrepresentations have been set aside and the material omissions have been included pursuant to *Franks v. Delaware, supra,* and its progeny, the affidavit contains insufficient facts to support a finding of probable cause.

We initially consider whether the affidavit on its face contained sufficient facts for a magistrate to make a finding of probable cause. For a magistrate to find that probable cause exists to issue a search warrant, the affidavit in support of a search warrant "must set forth sufficient facts to lead a reasonable person to conclude there is a probability that the defendant is involved in criminal activity." *State v. Cord,* 103 Wn.2d 361, 365-66, 693 P.2d 81 (1985).

Sufficient facts to support a finding of probable cause to search a residence for controlled substances have been found in primarily two settings. First, probable cause has arisen where drugs were observed in a residence. *See State v. Helmka,* 86 Wn.2d 91, 91-92, 542 P.2d 115 (1975) (officers saw marijuana growing in apartment window on three occasions); *State v. Walcott,* 72 Wn.2d 959, 961, 435 P.2d 994 (1967) (complaint stated that informant was "present when the marihuana was purchased in Mexico and brought to" Walcott's residence), *cert. denied,* 393 U.S. 890 (1968); *State v. Huff,* 33 Wn. App. 304, 306, 654 P.2d 1211 (1982) (informant "had personally observed a quantity of marijuana in the residence"); *State v. Olson,* 32 Wn. App. 555, 556, 648 P.2d 476 (1982) ("a reliable confidential informant had 'seen a quantity of . . . marijuana' " in Olson's residence). Second, probable cause to search the residence of a known drug dealer has been found where officers intercepted or observed a drug transaction in which the dealer was involved. *See United States v. Valenzuela,* 596 F.2d 824, 828-29 (9th Cir.) (probable cause to search supplier's residence where officer observed what appeared to be a drug transaction between a known dealer and his supplier), *cert. denied sub nom. Lizarraga v. United States,* 441 U.S. 965 (1979); *State v. Gross,* 57 Wn. App. 549, 552-54, 789 P.2d 317 (1990) (officers intercepted Federal Express package containing 3 pounds of

marijuana and a letter from the dealer which "revealed ongoing drug trafficking"), *review denied*, 115 Wn.2d 1014 (1990); *State v. Maffeo*, 31 Wn. App. 198, 199, 642 P.2d 404 (officers observed an intermediary, who obtained a drug sample from a large cocaine dealer's residence, exchanged it for marked bills at a rendezvous point, and returned directly to the dealer's residence), *review denied*, 97 Wn.2d 1012 (1982).

In contrast, probable cause to search a residence has not been found where the connection between the suspected drug activity and the residence was tenuous. For example, courts have not found probable cause to search a defendant's home where the defendant merely exhibited signs of drug use or carried drugs on their person at the time of their arrest. *See State v. Rangitsch*, 40 Wn. App. 771, 772-73, 780, 700 P.2d 382 (1985) (suspicion of drug use by party causing traffic accident which resulted in five deaths not sufficient to establish probable cause to search that party's residence); *State v. Stephens*, 37 Wn. App. 76, 79, 678 P.2d 832 (search of residence not justified by the small quantity of marijuana found in defendant's possession at the time of his arrest), *review denied*, 101 Wn.2d 1025 (1984). In addition, no probable cause to search has been found where small drug transactions were completed more than 2 weeks prior to the application for a warrant. *See State v. Higby*, 26 Wn. App. 457, 461, 613 P.2d 1192 (1980) (single purchase of marijuana 2 weeks prior to application for a warrant); *State v. Spencer*, 9 Wn. App. 95, 97, 510 P.2d 833 (1973) (two drug purchases completed at least 61 days prior to the date of the affidavit); *State v. Willey*, 363 A.2d 739, 741 (Me. 1976) (purchase of 2 ounces of marijuana on three occasions at least 31 days prior to issuance of warrant).

In the present case, Bittner and Groves contend that, on its face, the affidavit in support of a search warrant failed to support a finding of probable cause because it contained insufficient facts which could lead a reasonable person to conclude that Bittner and Groves were involved in criminal

activity. Detective Robertson's affidavit stated in relevant part:

> Within the past week the [informant] was with a friend, and while out with that friend, the friend made a stop at [the Bittner] residence. . . . The friend entered the [Bittner] residence and came out a couple of minutes later and told the [informant] "I got some shit." The [informant] asked what his friend meant and the friend stated "You know, coke." . . . Shortly after arrival at the friend's residence, the friend then shared the obtained cocaine with two (2) other adults in the presence of the [informant].

Because the informant himself did not observe drugs in the Bittner residence, the facts do not fall within the class of cases which usually support a finding of probable cause. *Cf. Helmka*, at 91-92. Similarly, because the drug-related conduct was related to the Bittner residence and because the conduct occurred within a week of the request for a warrant, the facts do not clearly fall within the class of cases which proscribe a finding of probable cause when there is no connection between the drug activity and the residence or when the connection is too remote. *Cf. Rangitsch*, at 780 (suspicion of drug use not probable cause to search user's residence); *Higby*, at 461 (single purchase of marijuana 2 weeks prior to application for a warrant).

█ After careful review of all the cases cited, we conclude that the facts presented are insufficient to support a finding of probable cause. The informant merely testified to a single purchase of cocaine by a friend at the suspect residence within the past week. The informant did not observe the drug transaction, and the affidavit did not state that Bittner was a known drug dealer. Although the drug transaction was connected by the informant to the Bittner home, this single unobserved transaction by an unidentified friend of the informant is uncorroborated by any other evidence. There was no effort to establish the friend's reliability. Under these circumstances, without some further corroboration, the facts in the affidavit are insufficient to support a finding of probable cause.

In light of our decision, it is not necessary to reach the issue of whether the affidavit in support of the search warrant contained reckless or intentional misstatements or omissions of material fact which violate the principles of *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). Nonetheless, we note with disapproval the type of affidavit produced here. The picture of the informant created by the affidavit for a search warrant was not in accord with the true facts. Although we accept the trial court's credibility determinations which resolved most of the *Franks* issues, it was error not to have included in the affidavit that the "concerned citizen" had previously contacted the sheriff's office because he had been investigated for a crime. This type of information could influence a magistrate's decision in assessing the reliability of an informant's tip.

The judgments and sentences of the trial court are reversed.

FORREST and THOMPSON, JJ., concur.

Review denied at 120 Wn.2d 1031 (1993).