444

[Nos. 53027-5-I; 53076-3-I.   Division One.   May 16, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. RANDAL LEE CHENOWETH ET AL., *Appellants*.

446

*Oliver R. Davis* (of *Washington Appellate Project*), for appellant Chenoweth.

*David B. Koch* and *Jennifer L. Dobson* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant Wood.

*Philip J. Buri* (of *Buri Funston, P.L.L.C.*); and *David S. McEachran, Prosecuting Attorney*, and *Kimberly A. Thulin, Deputy*, for respondent.

¶1 KENNEDY, J. — Defendants charged with manufacturing methamphetamine challenged the validity of a search warrant, contending that State agents omitted material facts from warrant affidavits in violation of the Fourth Amendment, but the trial court determined that any omissions or inaccuracies were innocent or negligent rather than intentional or reckless. On appeal, defendants attack the warrant on its face, argue that the Washington State Constitution should allow challenges to search warrants based on negligent omissions, challenge a jury instruction, and allege that a second count of possession of methamphetamine violates double jeopardy. Because the defendants fail to demonstrate error regarding consideration of the warrant and fail to establish that the Washington State Constitution requires a different result, the trial court's ruling on probable cause is affirmed. Because the second possession charge against Defendant Chenoweth violates double jeopardy, however, one of his convictions of possession is reversed, and the case against him is remanded for resentencing.

## FACTS

¶2 In February 2003, Nick Parker told Lynden Police Officer Michelle Boyd that Randy Chenoweth was operating a methamphetamine laboratory at 1200 Aaron Drive in Lynden, where Chenoweth had Parker's car. Boyd passed the information to Whatcom Interagency Narcotic (WIN) Detective Ryan King of the Blaine Police Department. Parker then told King that he had been to the residence, described equipment consistent with the manufacture of methamphetamine, and stated that both Chenoweth and Barbara Wood participated in the manufacture of methamphetamine. Parker also told King that he wanted his car back.

¶3 Detective King and Deputy Prosecutor Rosemary Kaholokula then sought and obtained a search warrant for the residence. By means of questions posed by the deputy prosecutor and answered by the detective under oath, they informed the Court Commissioner that Parker had a prior conviction for possession and delivery of cocaine. During the presentation, Kaholokula stated to the Commissioner that she had prosecuted Parker for the cocaine charges. The Commissioner asked the deputy prosecutor to swear to that, and she did so.

¶4 Following execution of the search warrant, Prosecutor Kaholokula and Lynden Police Detective Lee Beld sought and obtained a second warrant for a motor home outside the residence. During that transaction, the deputy prosecutor remarked that she had "confirmed Nicholas Parker's criminal history from what I recalled yesterday." And she asked the Commissioner whether the first warrant would have issued if she had not verified what she recalled about Parker's criminal history the previous day. The Commissioner responded that the warrant would have issued without the prosecutor's statement because Parker had already told Detective King about his criminal conviction and since there was no reason for him to have said that unless it were true, the statement was somewhat self-authenticating.

¶5 Based on the evidence found in the searches, the State charged Chenoweth and Wood each with one count of possession of precursor materials with intent to manufacture methamphetamine, one count of manufacturing methamphetamine, and one count of possession of methamphetamine. The State also charged Chenoweth with an additional count of possession of methamphetamine based on a white powder that he dropped during his arrest.

¶6 Chenoweth and Wood moved to suppress all evidence seized from the property, alleging that Kaholokula willfully and recklessly omitted material facts regarding Parker's history from discussions with the Commissioner when seeking the search warrants and requested a hearing

pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). In particular, Chenoweth and Wood contended that Kaholokula omitted material facts including (1) that Parker had once been a paid informant for the Bellingham Police Department and had been terminated from that role based on concerns about his reliability; (2) that Parker had a much more extensive criminal history than that revealed to the Commissioner; (3) that during her previous prosecution of Parker, Kaholokula had known about Parker's relationship with the police and had questioned his truthfulness to the extent of threatening to bring charges of suborning perjury against him; (4) that Parker requested payment from the police after the warrant was obtained and the WIN department paid Parker after the search warrants were executed; (5) that Parker sought and received police assistance in retrieving his car from Chenoweth after the warrant was obtained but before it was executed; and (6) that Wood was a plaintiff in a civil suit against the Whatcom County Sheriff in his former capacity as Blaine Chief of Police.

¶7 After several hearings to consider the *Franks* issues, the trial court stated that the information regarding Parker's extensive criminal history, the Bellingham Police Department's decision not to use Parker based on concerns about his reliability, and Kaholokula's suspicion that Parker had suborned perjury, would have prevented a finding of probable cause to issue the warrant if it had been intentionally or recklessly, rather than negligently, omitted. Thus, the omissions were material. But because the trial court found that King and Beld did not know about, and Kaholokula did not remember, Parker's history or relationship with the Bellingham Police Department, none of the omissions was intentional or reckless. The evidence found in the execution of the warrant was ruled admissible under *Franks,* and the case proceeded to trial.

¶8 A jury found Chenoweth and Wood guilty as charged. On appeal, Chenoweth attacks the warrant, challenging the trial court's findings (1) that Parker's previous infor-

mant relationship with police was terminated "for an unknown reason," (2) that Detective King and Prosecutor Kaholokula were not dishonest and did not affirmatively hide information from the commissioner, (3) that Detective King and Prosecutor Kaholokula did not exercise bad faith in failing to gather relevant information for the Commissioner. Chenoweth also challenges the trial court's conclusions that Parker was acting as a citizen informant and that Parker's criminal history was not omitted with reckless disregard for the truth. Wood joins his arguments, and she also contends that under the Washington Constitution, *negligent* omissions of material facts can provide a sufficient basis upon which to challenge warrant affidavits. Finally, Chenoweth contends that the trial court erroneously instructed the jury and that his second possession conviction subjected him to double jeopardy.

## ANALYSIS

### Informant Reliability

¶9 Probable cause for a search warrant may be based on information provided by an informant if the supporting affidavit contains sufficient underlying facts from which a neutral and detached magistrate could conclude that both the information and the informant are reliable. *State v. Northness*, 20 Wn. App. 551, 554, 582 P.2d 546 (1978) (citing *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969)). A magistrate's determination of probable cause will not be reversed absent an abuse of discretion. *State v. Clark*, 143 Wn.2d 731, 748, 24 P.3d 1006 (2001). When a "criminal" or professional informant provides the information supporting the warrant, evidence of his trustworthiness must be included in the warrant to establish his reliability, but "[w]hen the informant is an ordinary citizen, as opposed to the criminal or professional informant, and his identity is revealed to the issuing magistrate, intrinsic indicia of the

informant's reliability may be found in his detailed description of the underlying circumstances of the crime observed or about which he had knowledge." *Northness*, 20 Wn. App. at 557.

¶10 Chenoweth first contends that the warrant affidavit was inadequate on its face because it did not contain sufficient facts to indicate Parker's reliability. In particular, Chenoweth argues that although Parker's identity was revealed to the Commissioner, when it was also revealed that he had been convicted of a drug crime, the Commissioner erred by considering Parker to be a citizen informant such that intrinsic indicia of his reliability could be found in "his detailed description of the underlying circumstances of the crime observed or about which he had knowledge." *Northness*, 20 Wn. App. at 557. Chenoweth contends that *State v. Bittner*, 66 Wn. App. 541, 832 P.2d 529 (1992) "stands for the proposition that the critical distinction of being a 'concerned citizen informant,' and the concomitant cloaking of the informant in the presumption of reliability, is not warranted where the true facts reveal even mere suspected, unconvicted criminal conduct." Br. of Appellant Chenoweth at 43.

¶11 In *Bittner*, an officer's affidavit stated that a "concerned citizen" who was "NOT a regular police informant, or a paid police informant, and ha[d] not previously contacted this office, or any other police entity" reported a drug transaction and wished to remain anonymous for fear of "swift and sure retribution"; that the officer had "conducted a thorough criminal records check on the concerned citizen with negative results"; and that the informant was a long-standing member of the community employed by a major corporation. 66 Wn. App. at 542. According to the affidavit, the informant testified that his friend purchased drugs at a particular residence within the past week and that he accompanied the officer to the suspect's residence and identified the residence and the suspect's car. *Id.* Following the execution of the warrant, the informant testified that he cooperated only because the officer threat-

ened him with prosecution for intimidating a federal witness and impersonating a police officer; that the officer was aware that he was unemployed; that he had a prior criminal record of reckless driving and driving while intoxicated; that he had previously contacted the police to discuss his impersonation of a police officer; that the drug deal took place three or four weeks prior to the affidavit and that he participated in the drug use and paid for the drugs; and that he did not know the defendant, had no reason to fear him, and had never accompanied the officer to the defendant's residence. *Id.* at 543. Following a *Franks* hearing, the trial court found that the informant was not a credible witness and that the officer was unaware that some of the statements in the affidavit were false, and held that the affidavit established probable cause and the defendants failed to prove by a preponderance of the evidence that any reckless or intentional misstatements or omissions of material fact affected the finding of probable cause. *Id.* at 544.

¶12 On appeal, this court reversed the defendants' judgments and sentences because the facts in the affidavit were insufficient to support a finding of probable cause where the informant merely testified to a single unobserved transaction by an unidentified friend, and no corroborating evidence was provided regarding whether the defendant was a known drug dealer or whether the friend was reliable. *Id.* at 547. The court then stated:

> In light of our decision, it is not necessary to reach the issue of whether the affidavit in support of the search warrant contained reckless or intentional misstatements or omissions of material fact which violate the principles of *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Nonetheless, we note with disapproval the type of affidavit produced here. The picture of the informant created by the affidavit for a search warrant was not in accord with the true facts. Although we accept the trial court's credibility determinations which resolved most of the *Franks* issues, it was error not to have included in the affidavit that the "concerned citizen" had previously contacted the sheriff's office because he had been investigated for a crime. This type of information could

influence a magistrate's decision in assessing the reliability of an informant's tip.

*Id.* at 548.

■ ¶13  Contrary to Chenoweth's claim, *Bittner* does not establish a rule that an informant with a criminal conviction or suspected of criminal activity cannot be considered a citizen informant, rather than a criminal or professional informant, for the purposes of evaluating reliability. In fact, as stated in *Northness*, "the fact that an identified eyewitness informant may also be under suspicion—in this case because of her initial contact—has been held not to vitiate the inference of reliability raised by the detailed nature of the information and the disclosure of the informant's identity." 20 Wn. App. at 558 (citing *United States v. Banks*, 539 F.2d 14, 17 (9th Cir. 1976) (fact that named, untested, nonprofessional informer was under investigation based on suspicion of being involved in drug traffic was immaterial to question of reliability of informant where he voluntarily provided detailed eyewitness report of defendant's drug dealing); *United States v. Darensbourg*, 520 F.2d 985, 988 (5th Cir. 1975) (affidavit providing name and address of 15-year-old informant and detailed information about robbery evidence sufficient to demonstrate reliability); *United States v. Rueda*, 549 F.2d 865, 869 (2d Cir. 1977) (no need to show past reliability where informant is in fact a participant in the very crime at issue)).

¶14  Moreover, Chenoweth fails to demonstrate that other indicia of reliability here could not support a finding of probable cause. It is undisputed that Detective King informed the Commissioner that the informant's name was Nicholas Parker; that Parker had a prior conviction for delivery and possession of cocaine; that Parker went to the Chenoweth residence to get his car and was told to leave; that Parker had observed flasks, filters, chemicals, and equipment consistent with methamphetamine manufacture and that Chenoweth told Parker that he was manufacturing methamphetamine; that Parker admitted to assisting Chenoweth and Wood with methamphetamine

manufacture in the past; that Parker admitted to ingesting methamphetamine with Chenoweth and Wood at the residence in the past; and that Detective King verified that Wood's address was listed as that provided by Parker.

■ ■ ¶15 Because Detective King provided Parker's name to the Commissioner, because Parker made statements against his penal interest, and because the amount and kind of detail provided support an inference of reliability, the Commissioner did not abuse her discretion in finding that probable cause supported the search warrant. *See Northness*, 20 Wn. App at 556-57 (where informant is named to magistrate, rule requiring independent evidence of credibility may be relaxed); *State v. Lair*, 95 Wn.2d 706, 711, 630 P.2d 427 (1981) (because informant who admits criminal activity to police officer faces possible prosecution, statements raising such a possibility may support an inference of reliability as such statements are "not often made lightly"); *State v. O'Connor*, 39 Wn. App. 113, 122-23, 692 P.2d 208 (1984) (amount and detail of information provided enhanced credibility of named informant who was under arrest at the time of the statement and made statements against penal interest). We reject Chenoweth's assertion that Parker's tip must be subjected to the heightened scrutiny generally reserved for criminal unnamed informants, as well as his intimation that all other inferences are inapplicable. Reviewing courts are required to give great weight to a magistrate's determination related to probable cause and all doubts are to be resolved in favor of the warrant. *O'Connor*, 39 Wn. App. at 123.

## Material Omissions

■ ■ ¶16 Under the Fourth Amendment, an omission or false statement made in an affidavit in support of a search warrant may invalidate the warrant if it was (1) material and (2) made intentionally or with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978); *State v.*

*Cord*, 103 Wn.2d 361, 366-67, 693 P.2d 81 (1985). Where a defendant makes a substantial preliminary showing of such an omission or false statement, the trial court must hold a hearing. *Franks* 438 U.S. at 155-56; *Cord* 103 Wn.2d at 366-67. If the defendant then establishes his allegations by a preponderance of the evidence at that hearing, the material misrepresentations will be stricken from the affidavit and the material omissions will be added. If the modified affidavit then fails to support a finding of probable cause, the warrant is void and the evidence obtained will be excluded. *Franks*, 438 U.S. at 155-56; *Cord*, 103 Wn.2d at 366-67.

¶17 Here, the parties do not dispute the trial court's finding that information not provided to the Commissioner but later revealed at various *Franks* hearings was material. In particular, the police and deputy prosecutor did not tell the Commissioner about Parker's past work as a paid informant to the Bellingham Police Department, about Parker's full criminal history, about compensation paid to Parker by WIN, and about the prosecutor's prior dealings with Parker, including her suspicion that he had suborned perjury. The question is whether the trial court erred in concluding that these omissions were not intentional or reckless. Chenoweth contends that Deputy Prosecutor Kaholokula and Detective King omitted material information with reckless disregard for the truth. By implication at least, he argues that on these facts, the omissions were reckless as a matter of law regardless of the court's findings regarding the veracity of the deputy prosecutor and detective.

¶18 A reckless disregard for the truth may be shown where the affiant " 'in fact entertained serious doubts as to the truth' of facts or statements in the affidavit." *State v. Clark*, 143 Wn.2d 731, 751, 24 P.3d 1006 (2001) (quoting *O'Connor*, 39 Wn. App. at 117). "Serious doubts" can be " 'shown by (1) actual deliberation on the part of the affiant, or (2) the existence of obvious reasons to doubt the veracity of the informant or the accuracy of his reports.' " *Id.* (quoting *O'Connor*, 39 Wn. App. at 117).

¶19 Chenoweth contends that Kaholokula acted with reckless disregard for the truth by swearing to the best of her knowledge to the Commissioner that Parker's criminal history included the drug charge she prosecuted and then, when asking for the second search warrant, telling the Commissioner that she had confirmed her previous recollection, despite the fact that she did not actually fully review her file regarding her 2000 prosecution of Parker. If she had thoroughly reviewed her file, she would have found a copy of Parker's confidential informant agreement with the Bellingham Police Department dating from 1999 and continuing until after the *Franks* hearing process had begun. But Chenoweth fails to identify any evidence in the record to show that Kaholokula told the Commissioner that she had actually reviewed her file on Parker before swearing to her recollection of the fact of the conviction and fails to provide any support for an argument that she had an affirmative duty to review the file. Although a thorough review of the file would have undoubtedly reminded Kaholokula of her earlier suspicions regarding Parker's reliability, Chenoweth fails to identify any deliberation on Kaholokula's part, or any obvious reasons from the circumstances of Parker's tip to Detective King to cause her to doubt Parker's veracity. Given the trial court's unchallenged finding that Kaholokula, who prosecutes over 200 cases per year, had no recollection of Parker's relationship with the Bellingham police, and Chenoweth's failure to demonstrate that Kaholokula had serious doubts as to the truth of her statements regarding the fact of Parker's conviction in the case she prosecuted against him, the trial court did not err in concluding that Chenoweth's challenge to the warrant failed.

¶20 Chenoweth also contends that because the totality of the omissions—including Kaholokula's prior knowledge of Parker and King's knowledge that Parker had asked for money—was material and would be fatal to probable cause if intentionally or recklessly omitted, the trial court may infer recklessness. Relying on *United States*

*v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980) Chenoweth asserts that the "outcome-determinative materiality of those omissions suffices in and of itself to establish Kaholokula and King recklessly portrayed Parker as a citizen informant." Br. of Appellant Chenoweth at 61.

¶21 But as the court recognized in *State v. Garrison*, inferring recklessness from the omission of facts "clearly critical to the finding of probable cause," *Martin*, 615 F.2d at 329, is not proper because that " 'inference collapses into a single inquiry the two elements—"intentionality" and "materiality"—which *Franks* states are independently necessary.' " *State v. Garrison*, 118 Wn.2d 870, 873, 827 P.2d 1388 (1992) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)).

¶22 The trial court's credibility determinations that underlie its findings regarding the honesty of the deputy prosecutor and the detective in this case are binding on this appellate court.

## Challenge to Warrant Affidavit under Washington State Constitution

¶23 Wood contends that Washington Constitution article I, section 7 provides greater protection than the Fourth Amendment, such that defendants should be allowed to challenge warrants based on negligent inclusion of false information or negligent omissions of material facts. Wood cites cases from California, Montana, Colorado, and Louisiana adopting this rule or some variation of this rule. *See People v. Kurland*, 28 Cal. 3d 376, 618 P.2d 213, 168 Cal. Rptr. 667 (1980); *State v. Worrall*, 1999 MT 55, 293 Mont. 439, 446-47, 976 P.2d 968; *People v. Dailey*, 639 P.2d 1068, 1075 (Colo. 1982); *State v. Byrd*, 568 So. 2d 554, 559 (La. 1990). Wood presents an analysis of the six factors identified in *State v. Gunwall*, 106 Wn.2d 54, 58, 720 P.2d 808 (1986), for claims under the state constitution: (1) the textual language, (2) differences in the texts, (3) constitutional history, (4) preexisting state law, (5) structural dif-

ferences, and (6) matters of particular state or local concern.

¶24 The central question of the *Gunwall* analysis is whether a particular result is actually compelled by the unique characteristics of the state constitutional provision and its prior interpretations. *City of Seattle v. McCready*, 123 Wn.2d 260, 267, 868 P.2d 134 (1994). The Fourth Amendment provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The Washington State Constitution provides, "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." CONST. art. I, § 7. While it is true that the term "private affairs" has been interpreted to provide protection that is broader in scope than the language of the Fourth Amendment, *see, e.g., State v. Young*, 123 Wn.2d 173, 179-80, 867 P.2d 593 (1994), the focus here is on what constitutes "authority of law." Because a valid search warrant constitutes "authority of law," *McCready*, 123 Wn.2d at 271-72, the question we must decide is whether a warrant supported by an affidavit omitting material facts due to negligence rather than intention or recklessness necessarily fails to constitute "authority of law." Wood fails to argue or demonstrate that the textual differences between "authority of law" and the Fourth Amendment's "warrants" issued "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized," or that any constitutional history compels a different treatment of the negligent omission of material facts under the Washington Constitution.

¶25 Wood next argues that under the fourth factor, preexisting state law, *State v. Jackson*, 102 Wn.2d 432, 688

P.2d 136 (1984) supports her contention that article I, section 7 demands a higher standard than the Fourth Amendment when considering challenges to warrant affidavits including informant information. In *Jackson,* our Supreme Court declined to follow the United State Supreme Court decision in *Illinois v. Gates,* 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) replacing the *Aguilar-Spinelli* test with a "totality of the circumstances" approach. But Washington courts had required indicia of reliability to support informant tips even prior to *Aguilar-Spinelli. Jackson,* 102 Wn.2d at 439-40. Similarly, Washington courts allowed challenges to search warrants based on intentional or reckless omissions, but not negligent omissions, even before *Franks* was decided. *State v. Goodlow,* 11 Wn. App. 533, 535, 523 P.2d 1204 (1974) (adopting rule of *United States v. Carmichael,* 489 F.2d 983 (7th Cir. 1973) suppressing evidence only if government agent was either recklessly or intentionally untruthful); *State v. Hink,* 6 Wn. App. 374, 377, 492 P.2d 1053 (1972) (detective's honest misunderstanding of informant's information did not justify striking down warrant); *State v. Sewell,* 11 Wn. App. 546, 547-48, 524 P.2d 455 (1974) (detective's good faith claim that he conducted the controlled buy was a negligent misstatement that did not justify striking down warrant); *see also State v. Seagull,* 95 Wn.2d 898, 908, 632 P.2d 44 (1981) (adopting *Franks* as "wholly logical" because Fourth Amendment proscribes "unreasonable" but not "inaccurate" searches). Thus, this factor does not compel a different rule for negligent omissions of material information under article I, section 7.

¶26 The sixth factor considers matters of particular state or local concern. The question is whether potential policy considerations outweigh any need for national uniformity. Although four other states have departed from the *Franks* rule, Wood offers no particular state or local concern weighing in favor of a new rule beyond the State's general interest in protecting an individual's right to privacy.

¶27  In sum, we conclude that Wood fails to demonstrate that article I, section 7 requires a different standard for challenging warrants from that of the Fourth Amendment.

## Jury Instructions

¶28  Chenoweth also contends the trial court erred by giving Instruction 23 providing:

> In conclusion, let me remind you that each of you has taken a solemn oath that you will well and truly try the case and a true verdict render upon the evidence given you in the trial and upon the law as now given you by the Court. You must not allow yourselves in the least to be moved by sympathy or influenced by prejudice. The question of guilt or lack of guilt is a question of fact, not a question of sympathy or prejudice or what the punishment will be. If, as a matter of fact, from the evidence, the defendant is guilty, no amount of sympathy will make the defendant innocent. If the defendant is innocent, no amount of prejudice will make him guilty; for, regardless of any feelings of sympathy or prejudice, the defendant is, upon the evidence and evidence alone, either guilty or not guilty. What is the true verdict, as shown by the evidence, is the one question before you.

Clerk's Papers at 82.

¶29  In particular, Chenoweth contends that the instruction suggests that the defendant can be acquitted only if he is innocent. Chenoweth cites *Gomila v. United States*, 146 F.2d 372 (5th Cir. 1944) to support his argument that Instruction 26 constituted reversible error. In *Gomila*, the trial court instructed the jury as follows:

> The rule of the presumption of innocence imposes upon the government the burden of establishing the guilt of each defendant, as stated, beyond a reasonable doubt, but, Gentlemen, as forceful as that rule is in protecting one charged with crime, it must never be forgotten that it was not intended, nor has it ever been intended, as extending an aid to one, who in fact is guilty, so that he may escape just punishment. The rule is but a humane provision of the law, intended to prevent, so far as

human agencies can, the conviction of an innocent defendant, but absolutely nothing more.

146 F.2d at 373. Because the instruction was not a correct statement of the law, and because it and other errors could have led the jury to believe that the judge was of the opinion that the defendants were guilty and should be convicted, the *Gomila* court reversed the conviction. *Id.* at 376.

¶30 But here, several instructions, including Instruction 26, told the jury that it was to decide whether the defendants were guilty or not guilty. Standing alone, the wording of Instruction 26 probably could be improved, but read as a whole, the instructions would not lead the jury to believe that acquittal required a finding of actual innocence.

## Double Jeopardy

¶31 Finally, Chenoweth contends that his two convictions for possession of methamphetamine subjected him to double jeopardy, relying on *State v. Adel*, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998). When, as here, a defendant is charged with more than one crime under the same statutory provision, the proper inquiry is what unit of prosecution was intended by the legislature within the particular criminal statute. *Adel*, 136 Wn.2d at 634. If the legislature fails to designate the unit of prosecution within the criminal statute, any resulting ambiguity must be construed in favor of lenity. *Id.* at 635 (citing *Bell v. United States*, 349 U.S. 81, 84, 75 S. Ct. 620, 99 L. Ed. 905 (1955) (doubt is resolved against turning a single transaction into multiple offenses)). Former RCW 69.50.401(d) (1998), just as the section at issue in *Adel*, former RCW 69.50.401(e) (1998), did not indicate whether the legislature intended to punish a person multiple times for having amounts of the drug in more than one place within the person's actual or constructive possession. The State argues that the vial of methamphetamine found near Chenoweth's person at the time of his arrest supports a separate charge because there was no evidence that the methamphetamine found in the

house was from the same batch or source. But the unit of prosecution test and the rule of lenity require a different result. Because the statute prohibits possession, regardless of intent or source, and nothing in the record suggests a separate unit of prosecution, double jeopardy concerns require dismissal of one count of possession. *Adel*, 136 Wn.2d at 637.

¶32 The trial court's ruling denying suppression of evidence obtained as a result of the warrant is affirmed. All convictions are affirmed except Count IV against Chenoweth, which is reversed. The case against Chenoweth is remanded for resentencing on his remaining convictions.

AGID and SCHINDLER, JJ., concur.