Filed 6/17/13  P. v. Pelayo CA1/5
Opinion on remand from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ANTONIO PLASCENCIA PELAYO,<br><br>        Defendant and Appellant. | A123042<br><br>(Solano County<br>Super. Ct. No. FCR243938) |

Appellant, Antonio Plascencia Pelayo, challenges his conviction and sentence for possession of methamphetamine for sale, possession of ecstasy for sale, and evading a police officer.  He challenges the validity of a search warrant for his residence, which was based primarily on information received from confidential informants and contained in a partially sealed affidavit.  Pelayo also argues that Penal Code section 654 bars his punishment for possession of both methamphetamine and ecstasy for sale.  Finally, he argues that he is entitled to the benefit of 2009 amendments to Penal Code section 4019 which went into effect on January 25, 2010 pursuant to Senate Bill No. 18 (2009–2010 3d Ex. Sess.) and increased the good conduct credits available to a defendant for presentence custody in a local detention facility.  (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, § 50.)  We find no error and affirm.[1]

---

[1] We filed our first opinion in this appeal on February 16, 2010.  In that opinion, we addressed only the search warrant and section 654 issues that had been raised in Pelayo's appellate briefs.  We affirmed the judgment.  On February 22, 2010, before our

## I. BACKGROUND

On June 12, 2007, the superior court issued a warrant authorizing a search of a single-family home at 375 Mountain Meadows Drive in Fairfield and the person of Pelayo for, among other items, methamphetamine and items associated with the sale of methamphetamine. In the supporting affidavit, Solano County Sheriff's Deputy Detective Dax R. West averred that he had extensive experience in narcotics trafficking investigations and arrests, and that, "Within the past ten (10) days, (S) Antonio Pelayo sold Methamphetamine to a Confidential Informant (CI#2).[2] The CI#2 confirmed with me by a photograph of Antonio Pelayo that he was the one who sold him/her Methamphetamine."[3] An "Appendix A" to the affidavit provided additional information in support of the warrant. West asked the court to file the appendix under seal in order to

---

opinion became final, Pelayo filed a petition for rehearing seeking the benefit of 2009 amendments to section 4019, which had taken effect in January 2010. We granted the petition for rehearing, vacated our original decision, and after supplemental briefing issued a new opinion on May 6, 2010, that granted Pelayo the retroactive benefit of the amendments to section 4019. On July 21, 2010, the Supreme Court granted the People's petition for review and deferred the case pending a decision in *People v. Brown* (No. S181963). On June 18, 2012, the Supreme Court issued its decision and held that the 2009 amendments to section 4019 did not have retroactive effect. (*People v. Brown* (2012) 54 Cal.4th 314, 318 (*Brown*).) On May 16, 2013, the Supreme Court transferred this case back to this court "with directions to vacate its decision and to reconsider the cause in light of" *Brown*. We have vacated the prior opinion by separate order. The People filed a supplemental letter brief pursuant to California Rules of Court, rule 8.200(b)(1), and Pelayo informed us that he did not intend to file supplemental briefing.

[2] As discussed *post*, the detective also received information, set forth in the sealed portion of the search warrant affidavit, from another confidential informant identified as CI#1.

[3] West also stated, "I ran Pelayo through NCIC and Cal Photo to obtain a criminal history and photograph. Antonio Pelayo (DOB 072178) has been arrested for the following crimes in the past; 23152(A)/23152(B) CVC Driving Under the Influence, 23103 CVC Reckless Driving, 14601.5(A) CVC Driving with a Suspended License, 12677 H&S Possess Fireworks w/o Permit, 1320(A) PC Fail to Appear Misdemeanor Charges."

protect the confidentiality of informant identity.  The court granted the request and issued the warrant.

On June 20, 2007, West observed Pelayo driving on public streets and attempted a traffic stop.  Pelayo sped away and led police on an extended car chase that ended only when a police vehicle blocked Pelayo's car.  After Pelayo was placed under arrest, officers searched 375 Mountain Meadows Drive pursuant to the warrant.  There the officers seized almost two kilograms of methamphetamine, 52 pills containing both ecstasy and methamphetamine, three loaded firearms stored in three different locations in the home, a digital scale, pay/owe sheets, indicia of ownership or residence, $19,375 in U.S. currency, almost $100,000 in jewelry, three fully-paid vehicles, $11,000 in receipts for electronics, $11,000 in receipts for furniture, a $10,000 certificate of deposit, and payment records for a Las Vegas timeshare.  Pelayo waived his *Miranda* rights, acknowledged ownership of the methamphetamine, and admitted that he sold methamphetamine to a select group of about four or five people.

Pelayo was charged by felony complaint, which was later amended to charge Pelayo with possession of methamphetamine and ecstasy while armed with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a); counts 1 and 2); possession of methamphetamine for sale and possession of ecstasy for sale (Health & Saf. Code, § 11378; counts 3 and 4); and evading a police officer in willful or wanton disregard for the safety of persons or property (Veh. Code, § 2800.2, subd. (a); count 5).  As to count 3, it was alleged that Pelayo possessed more than one kilogram of methamphetamine within the meaning of Health and Safety Code section 11370.4, subdivision (b)(1).  As to counts 3 and 4, it was alleged that the quantity of the substance possessed was an aggravating sentencing factor within the meaning of Penal Code section 1170.73, and that Pelayo was personally armed with a firearm during the commission and attempted commission of the crimes, within the meaning of Penal Code section 12022, subdivision (c).  It was further alleged that counts 1 through 4 were offenses that would render Pelayo ineligible for probation if convicted except in unusual cases pursuant to Penal Code section 1203.073, subdivision (b)(2).

Pelayo moved to unseal the search warrant affidavit, to quash and traverse the search warrant, and to reveal the identity of the confidential informant. The court conducted an in camera review of Appendix A to the search warrant affidavit and concluded it supported issuance of the search warrant. The court ordered the unsealing of a portion of Appendix A that explained how West determined that 375 Mountain Meadows likely was Pelayo's residence. The court specifically declined to unseal the details of police contacts with two confidential informants referenced in the appendix, which might disclose their identities.

The unsealed excerpt from Appendix A explained that West did a "work up" on Pelayo and found two vehicles registered in his name at 375 Mountain Meadows Drive in Fairfield (a 2006 Hummer and a 2006 Chrysler), and four vehicles registered in his name at 2267 Atherton Court in Fairfield (a tan Chevrolet pickup with license plate no. 8E80904, a 2004 BIGDG motorcycle, a 1988 Ford, and a 1963 Chevrolet). The address listed on Pelayo's 2005 driver's license was 2267 Atherton Court. Pelayo owned 375 Mountain Meadows Drive, and Esperanza Zavala owned 2267 Atherton Court. The Fairfield Police Department informed West that in December 2006 they responded to an alarm call at 375 Mountain Meadows Drive and a person with the surname Pelayo was the contact person. West drove by 2267 Atherton Court and saw a car there that was registered to Zavala. At 375 Mountain Meadows Drive, the Chevrolet pickup registered to Pelayo was parked in the driveway. Another detective had observed that same pickup truck during surveillance of a narcotics transaction.

Pelayo waived his right to a preliminary hearing. Both parties waived jury trial. On September 25, 2008, following a bench trial, the court convicted Pelayo of counts 3, 4 and 5, and granted the People's motion to dismiss counts 1 and 2.

At sentencing, the court denied Pelayo's motion to strike the Health and Safety Code section 11370.4, subdivision (b)(1) allegation and grant him probation. The court sentenced Pelayo to the low term of 16 months for count 3, a consecutive eight-month term (one-third the middle term) each for counts 4 and 5, a three-year enhancement pursuant to Health and Safety Code section 11370.4, subdivision (b)(1) for count 3, and a

4

three-year enhancement pursuant to Penal Code section 12022, subdivision (c) for count 3. A three-year enhancement pursuant to Penal Code section 12022, subdivision (c) for count 4 was stayed. The total term was eight years, eight months.

## II. DISCUSSION

### A. *Challenges to Search Warrant*

Pelayo asks this court to conduct an in camera review of the sealed portions of the search warrant affidavit to determine if they were properly sealed and whether the search warrant was supported by probable cause.

The test for determining whether an affidavit establishes probable cause for the issuance of a search warrant is a "totality-of-the-circumstances analysis." (*Illinois v. Gates* (1983) 462 U.S. 213, 238 (*Gates*); see *In re Lance W.* (1985) 37 Cal.3d 873, 896 [evidence may be suppressed only if it was seized in violation of the federal constitution].) "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular case." (*Gates*, at p. 238.)

When an affidavit consists in part of an informant's tip to the police, the informant's veracity, reliability and basis of knowledge are relevant considerations in the totality-of-the-circumstances test, but no single factor is determinative. (*Gates, supra,* 462 U.S. at p. 233.) "[A] deficiency in one [of these elements] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability. [Citations.]" (*Ibid.*) Indicia of reliability include prior accurate reports by the informant, a lack of ulterior motives in making the report, explicit and detailed description of the alleged wrongdoing, the informant's first-hand observation of the alleged wrongdoing, and corroboration by independent police work. (*Id.* at pp. 233–234, 241.)

When the sufficiency of a search warrant affidavit is challenged on appeal, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed. [Citation.]" (*Gates, supra,* 462 U.S. at

pp. 238–239.)  "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review.  A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'  [Citation.]"  (*Id.* at p. 236.)  Moreover, " 'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'  [Citation.]  This reflects both a desire to encourage use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise may be the case."  (*Id.* at p. 237, fn. 10.)

In *People v. Hobbs*, the California Supreme Court authorized the sealing of a search warrant affidavit when necessary to protect the identity of a confidential informant, and prescribed a procedure to review the sufficiency of a sealed affidavit.  (*People v. Hobbs* (1994) 7 Cal.4th 948, 971–975 (*Hobbs*).)  *Hobbs* directed that "[w]hen a defendant seeks to quash or traverse a warrant where a portion of the supporting affidavit has been sealed, the relevant materials are to be made available for in camera review by the trial court.  (*Hobbs*, *supra*, 7 Cal.4th at p. 963; see Evid. Code, § 915, subd. (b).)  The court should determine first whether there are sufficient grounds for maintaining the confidentiality of the informant's identity.  If so, the court should then determine whether the sealing of the affidavit (or any portion thereof) 'is necessary to avoid revealing the informant's identity.'  (*Hobbs*, *supra*, 7 Cal.4th at p. 972.)  Once the affidavit is found to have been properly sealed, the court should proceed to determine 'whether, under the "totality of the circumstances" presented in the search warrant affidavit and the oral testimony, if any, presented to the magistrate, there was "a fair probability" that contraband or evidence of a crime would be found in the place searched pursuant to the warrant' (if the defendant has moved to quash the warrant) or 'whether the defendant's general allegations of material misrepresentations or omissions are supported by the public and sealed portions of the search warrant affidavit, including any testimony offered at the in camera hearing' (if the defendant has moved to traverse the warrant).  (*Id.* at pp. 975, 974.)"  (*People v. Galland* (2008) 45 Cal.4th 354, 364.)

6

We have conducted our own in camera review of the sealed portions of Appendix A and have considered each of the issues *Hobbs* directs us to assess. We conclude the trial did not err in either its denial of Pelayo's motion to unseal the search warrant affidavit or his request to reveal the identity of the confidential informant. We also find that the "totality of the circumstances" presented in the search warrant affidavit established a fair probability that contraband or evidence of a crime would be found in Pelayo's residence.

1. *Sufficient Grounds to Maintain Confidentiality of Informant*

Generally, disclosure of a confidential informant's identity is required only if the informant was a potential material witness on the issue of guilt in the defendant's case. (*Hobbs, supra,* 7 Cal.4th at p. 959.) In contrast, "the identity of an informant who has supplied probable cause *for the issuance of a search warrant* need not be disclosed where such disclosure is sought merely to aid in attacking probable cause." (*Ibid.*) Our review of the sealed portion of the affidavit confirms that the confidential informants mentioned therein were not material witnesses to the possession and evasion charges with which Pelayo was charged. Therefore, the trial court properly refused to disclose the informants' identities.

2. *Necessity of Sealing the Affidavit*

Because the trial court properly refused to disclose the identities of the confidential informants, the court was justified in keeping sealed any portions of Appendix A that would have disclosed the informants' identities. (See *Hobbs, supra,* 7 Cal.4th at p. 972.) The trial court determined that only part of the appendix potentially disclosed the identities of the informants, and it ordered the unsealing of other material portions of the appendix. Our review of the portion of the appendix that remains sealed confirms that disclosure of any material information contained therein might lead to identification of the informants. Therefore, we affirm the trial court's decision to keep that part of the appendix under seal.

### 3. *Probable Cause to Issue Search Warrant*

Having determined that much of the search warrant affidavit must remain under seal, the trial court had to "take it upon itself both to examine the affidavit for possible inconsistencies and insufficiencies regarding the showing of probable cause, and inform the prosecution of material or witnesses it requires." (*Hobbs, supra,* 7 Cal.4th at p. 973.) The trial court concluded the affidavit on its face established probable cause, without the necessity of calling witnesses or production of other evidence. Our review confirms that the sealed and unsealed portions of the affidavit, without more, provided a substantial basis for the magistrate's probable cause determination. Information provided by an initial informant about a drug sale was directly corroborated by the police. Information provided by the second informant identifying Pelayo as the drug seller was substantially corroborated by the police. Moreover, the affidavit included an expert opinion that Pelayo was an upper-midlevel dealer and this opinion is supported by information provided by one informant and uncovered by the police investigation. This information established probable cause to believe Pelayo was a drug dealer, and a magistrate may reasonably conclude that evidence of drug dealing is likely to be found in a drug dealer's residence. (See *People v. Pressey* (2002) 102 Cal.App.4th 1178, 1184 [listing cases].) Therefore, the affidavit established probable cause to believe drugs would be found at Pelayo's residence and thus to issue the search warrant.

### 4. *Material Misrepresentations*

Our review of the sealed portion of the affidavit discloses no basis to suspect that it contains knowingly or recklessly false representations material to the finding of probable cause. (See *Hobbs, supra,* 7 Cal.4th at p. 974.)

In conclusion, we affirm the trial court's decisions to maintain the confidentiality of the informants mentioned in the search warrant affidavit, to keep a portion of the affidavit under seal to maintain that confidentiality, to affirm the magistrate's finding of probable cause to issue the warrant, and to deny Pelayo's motions to traverse the warrant and suppress the evidence seized pursuant to the warrant. Because these are Pelayo's only challenges to his conviction, we affirm his conviction.

8

B.    *Penal Code Section 654*[4]

Pelayo argues that section 654 bars imposition of sentences for both counts charging possession for sale under Health and Safety Code, section 11378—count 3 (possession of methamphetamine) and count 4 (possession of ecstasy).  Pelayo notes that the pills found in his possession contained both ecstasy and methamphetamine and argues he cannot be multiply punished for the single act of possessing these pills, citing *In re Adams* (1975) 14 Cal.3d 629.  This argument, however, ignores the fact that crystal methamphetamine was also found in Pelayo's possession.

Section 654 prohibits multiple punishment for an "act or omission which is made punishable in different ways by different provisions of this Code" or by the penal provisions of other codes, including the Health and Safety Code.  (*In re Adams, supra*, 14 Cal.3d at p. 633; see § 654.)  "If one offense is necessarily included within another offense, section 654 bars punishment for both offenses.  [Citation.] . . . [¶] The reach of section 654 is not limited, however, to necessarily included offenses. [Citation.]  By its terms, the section forbids multiple punishments for the commission of a single 'act' or 'omission.'  The 'act' necessary to invoke section 654 need not be an act in the ordinary sense that it is a separate, identifiable, physical incident, but may be 'a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654.  The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.'  [Citation.]"  (*In re Adams*, at pp. 633–634.)  "[T]he principal inquiry [is:]  was the defendant's criminal objective single or multiple?"  (*Id.* at p. 635; see also *People v. Latimer* (1993) 5 Cal.4th 1203, 1216 [criticizing but reaffirming this "intent and objective" interpretation of § 654].)

In *In re Adams*, the Supreme Court held that the petitioner was improperly sentenced for five counts of transporting drugs based on the single act of delivering an

_____

[4] All further code references are to the Penal Code unless otherwise indicated.

9

attaché case and several plastic bags containing five different types of drugs to another person's car, since the "petitioner's simultaneous transportation of the various drugs in his possession was clearly motivated by the single objective of delivering them to [a single person]." (*In re Adams, supra,* 14 Cal.3d at pp. 632, 635.) The court distinguished cases holding that simultaneous *possession* of different types of drugs may properly be multiply punished, and commented, "In each of the[se] drug possession cases, the defendant's possession may or may not have been motivated by a single intent and objective, for one may possess drugs for a variety of reasons." (*Id.* at p. 635.)

"Whether a course of criminal conduct violating more than one penal statute is committed with a single criminal intent or with multiple criminal objectives is ordinarily a question of fact for the trial court, whose implied finding of multiple criminal intent will be upheld if supported by substantial evidence." (*People v. Green* (1988) 200 Cal.App.3d 538, 543–544.) The court below presided over Pelayo's bench trial and thus was well acquainted with the evidence against him. That evidence showed that Pelayo possessed about two kilograms of methamphetamine in a white crystalline form, stored in large plastic bags, and also possessed 52 pink pills containing both methamphetamine and ecstasy. The trial court implicitly found that Pelayo had separate criminal objectives for possessing the methamphetamine powder and the ecstasy/methamphetamine pills, and that finding is supported by the record. The trial court could easily infer from the evidence that Pelayo had separate criminal objectives to sell crystal methamphetamine and to sell the pills that contained a combination of ecstasy and methamphetamine. Moreover, Pelayo admitted to police that he sold drugs to several people, and evidence uncovered in his home (three firearms stored at three locations, a digital scale with white residue, and pay/owe sheets) supported an inference that Pelayo conducted an ongoing, large-scale drug sales operation serving multiple customers.

In contrast to a single act of transportation and delivery of multiple types of controlled substances, " '[t]he act of possession cannot be conceptualized as a single 'act' covering possession of two kinds of illicit drugs.' [Citation.]" (*In re Adams, supra*, 14 Cal.3d. at p. 635.) Possession of two types of drugs in large amounts supports the

inference that Pelayo intended multiple sales to different customers. "Under [such] circumstances, section 654 does not prohibit punishment for each drug offense." (*People v. Briones* (2008) 167 Cal.App.4th 524, 529–530.)

Pelayo also argues that he cannot be multiply punished for the possession of methamphetamine in both power and pill form, citing *People v. Schroeder* (1968) 264 Cal.App.2d 217 (*Schroeder*). *Schroeder*, however, held that a defendant cannot be multiply *convicted* of the possession of different forms of the same drug. (*Id.* at p. 228.) Pelayo was not multiply convicted for possession of methamphetamine and his reliance on *Schroeder* is misplaced. The court in *Schroeder* further expressly acknowledged that "possession of narcotics under different classifications of the Health and Safety Code may be charged and punished as separate crimes notwithstanding a simultaneous possession constituting but one transaction." (*Ibid*.) For the reasons already discussed, he was properly punished for both possession of ecstasy and possession of methamphetamine.

C.    *Retroactivity of 2009 Amendments to Section 4019*

Pelayo argues that the 2009 amendments to section 4019, which took effect in January 2010, and have since been superseded, must be retroactively applied to his case under the authority of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). With certain exceptions not applicable here, the amendments increased the good conduct credits a defendant could receive for time spent in presentence custody.

The Supreme Court resolved this issue in *Brown*, holding that the amendments applied prospectively only. (*Brown, supra,* 54 Cal.4th at p. 318.) The court specifically held that the *Estrada* rule did not apply: "The holding in *Estrada* was founded on the premise that ' "[a] legislative mitigation of the penalty *for a particular crime* represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law" ' (*Estrada,*[*supra,* 63 Cal.2d] at p. 745, italics added) and the corollary inference that the Legislature intended the lesser penalty to apply to crimes already committed. In contrast, a statute increasing the rate at which prisoners may earn credits for good behavior does not represent a judgment about the

11

needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent. Former section 4019 does not alter the penalty for any crime; a prisoner who earns no conduct credits serves the full sentence originally imposed. Instead of addressing punishment for past criminal conduct, the statute addresses *future conduct* in a custodial setting by providing increased incentives for good behavior." (*Brown,* at p. 325, fn. omitted.)

*Brown* compels our rejection of Pelayo's argument that he is entitled to additional presentence custody credits.

### III. DISPOSITION

The judgment is affirmed.

_____
Bruiniers, J.

We concur:

_____
Jones, P. J.

_____
Simons, J.