Filed 5/6/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B309947 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. BA485514 |
| v. | |
| ROBERT ANDREW DELGADO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa T. Sullivan, Judge. Affirmed.

Leonard J. Klaif, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jason Tran, Supervising Deputy Attorney General, and Shezad H. Thakor, Deputy Attorney General, for Plaintiff and Respondent.

————————————

We must assay probable cause.

A fleeting interaction outside a gang hangout led police to illegal guns and drugs. The trail continued to videos of Robert Andrew Delgado directing assaults that jumped minors into his gang. The trial court denied Delgado's motion to suppress the videos. We affirm. Code citations are to the Penal Code.

On July 12, 2019, Larry Burcher swore out an affidavit for a search warrant. We italicize our summary of his words.

*In 28 years as a police officer, Burcher had conducted hundreds of investigations. He had been the supervising detective in charge of a gang impact team for six years.*

*The Highland Park criminal street gang has been well-established in Los Angeles for more than 40 years. It regularly assaults, robs, and murders people as techniques of intimidation so it can freely sell illegal guns and drugs without fear of reports to police. The gang also extracts "taxes" from businesses.*

*The Highland Park gang has been active in crime. From January to July 2019, for instance, members of this gang committed six robberies, eight shootings, and 12 aggravated assaults, according to police information. During this interval, police seized 10 guns from members of this gang.*

*A well-documented gang hangout is Robert "Loco" Delgado's house at 510 Toledo Street. Delgado is an active member of Highland Park. Police identified Delgado as a member of this gang as recently as March 14, 2019, when officers from Burcher's unit spoke to Delgado during a traffic stop.*

*Delgado's record includes four felony convictions: gang member with a gun, assault with a deadly weapon, carjacking, and possession of a controlled substance for sale.*

*Gang members gather at Delgado's home on a regular basis.*

On July 5, 2019, officers were watching this hangout because so many gang members were visiting it and because crime attributed to this gang recently had increased.

Around 7:15 p.m., police saw a black Lexus SUV stop by 510 Toledo Street. Two passengers left the SUV and went into the house. These passengers were Rodrigo Medina and Ruben Ruiz. "Approximately three to five minutes later," Medina and Ruiz returned to the SUV. Moments later, Delgado went from his house to the SUV's front passenger window and leaned in close for a few seconds. He was "possibly delivering narcotics and/or firearms and then immediately returned to his residence as the black Lexus drove away."

The watching officers identified Ruiz as a member of Highland Park who was on active parole for armed robbery. Ruiz's parole release had search conditions.

The officers stopped the SUV. Three people were inside. The driver was a gang associate. Medina and Ruiz were the passengers. The officers found about $700 in cash, two illegal guns, and a half-pound of assorted drugs. Medina had all the drugs on his person, with the exception of 1.49 grams of methamphetamine, which was elsewhere in the SUV.

Police arrested the SUV driver and the two passengers on gun, drug, and robbery charges.

Burcher's opinion, based on his experience and on this evidence, was Delgado was supplying drugs and guns to his fellow Highland Park gang members to further the gang's criminal enterprise.

Burcher sought authority to search 510 Toledo Street for guns and drugs. He also wanted to search for cellular telephones and digital cameras that may "store or depict criminal street gang

3

*activity"; for "paraphernalia related to a criminal street gang";*
*and for photographs showing the residents involved in criminal*
*gang activity.*

After a judge signed Burcher's warrant, police searched Delgado's house and a mobile phone they found there. The phone had videos of Delgado orchestrating nine beatings to initiate new members into the Highland Park gang.

The trial court denied the motion to suppress the video evidence of Delgado's role in these beatings.

Delgado pleaded no contest to one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 1) and two counts of solicitation or recruitment of another person to participate in a criminal gang (§ 186.26, subd. (a); counts 2 & 3). Delgado admitted gang and recruitment-of-a-minor allegations. (§§ 186.22, subd. (b)(1)(A) & 186.26, subd. (d).)

On appeal from the denial of his motion to suppress, Delgado makes two arguments: the warrant lacked probable cause; and Burcher omitted material facts by failing to date Delgado's four felony convictions.

We treat these two arguments in turn.

On issue one, the warrant presented probable cause.

When magistrates consider a search warrant application, they must make a practical and commonsense decision about whether the affidavit shows a fair probability police will find contraband or evidence of a crime at a particular place. The reviewing court's duty is simply to ensure the magistrate had a substantial basis for that conclusion. This standard is flexible and easy to apply. (*Illinois v. Gates* (1983) 462 U.S. 213, 238–239.) The determination of reasonable suspicion must be based

4

on commonsense judgments and inferences about human behavior.  (*Illinois v. Wardlow* (2000) 528 U.S. 119, 125.)

These standards are federal.  California state law must adhere to them.  (*People v. Souza* (1994) 9 Cal.4th 224, 232–233.)

In a nutshell, Burcher's affidavit told how gang member Ruiz stopped at his gang's hangout, went in with Medina for three to five minutes while the driver waited in the car, and then returned to the SUV.  Delgado emerged for a brief huddle and returned inside as the SUV departed.  The watching officers suspected these gang members had just moved illegal guns or drugs into the SUV, so they stopped it and found two guns and half a pound of drugs.  (For perspective, 15 four-inch nails weigh about half a pound.)  Nearly all the drugs were on Medina's person.

Delgado does not contest the stop of the SUV or the discovery of the guns and drugs.

The affidavit presents reasonable support for an inference police had witnessed what probably was a transfer of illegal contraband from the hangout to the SUV.  This gang was in the guns-and-drugs business.  The purpose of the visit probably was not social; people rarely drive in Los Angeles traffic for a social visit of three to five minutes while the driver waits in the car.  In context, the brevity and sequence of this in-person encounter is suspicious because it is more consistent with a pickup or dropoff.  Lending substance to that inference was the immediate discovery of guns and drugs in the SUV.  Medina had gone into the gang hangout; immediately afterwards police found nearly all the drugs in Medina's pockets.  Together with the gang's surge in criminality and the locale's status as a busy gang hangout, there

was probable cause to search it for guns, drugs, and other evidence of gang-related crime.

Delgado notes police did not see contraband at the hangout, nor did police see anyone carrying contraband to the SUV.  He speculates this absence of visual confirmation means the people in the SUV had the guns and drugs *before* they arrived at the hangout.

Delgado's speculation does not make sense of this picture.  The police suspicions do; they are the product of commonsense judgments and inferences about human behavior.  If the people in the SUV already had their guns and drugs, why stop by the "well-documented gang hangout"?  The brevity and the waiting car suggested an in-person task.  The guns and drugs suggested what that task had been.  Police suspected they might find contraband in the hangout, and a transfer to the SUV reasonably explained what happened to it.

The police hypothesis adds up.  Delgado's briefing offers no alternative.  Nothing else in the record explained the stop.

At oral argument, Delgado's counsel suggested two other possibilities for the brief stop at the hangout.

One was to see if Delgado had COVID-19.  This is illogical: you would not drive through traffic to encounter an infectious disease face to face.  You would use your phone.

Counsel's other suggestion was that "perhaps they were planning a drive-by shooting for later that day."  This supports our analysis.  Drive-by shootings require guns, which is what police suspected and found in the SUV.

Counsel offered no other commonsense judgments or inferences about human behavior to explain the brevity of this

visit to the gang hangout. In all the briefing and argument, the officers' inference stands as the only logical contender.

Delgado cites three cases. (*People v. Pressey* (2002) 102 Cal.App.4th 1178, 1182–1190; *United States v. Underwood* (9th Cir. 2013) 725 F.3d 1076, 1079–1083; *Bravo v. City of Santa Maria* (9th Cir. 2011) 665 F.3d 1076, 1079–1085.) He maintains these cases require police to link probable cause determinations to a specific location. As the prosecution points out, Burcher did link events to a specific location—510 Toledo Street—and thus satisfied any such requirement. Delgado does not attempt to rebut this point.

In sum, Delgado's first argument misses the mark.

On issue two, Delgado argues the affidavit omitted material information by failing to date Delgado's four felony convictions. These dates were 1999, 2003, 2008, and 2012. Delgado says that Burcher omitted these dates to conceal the staleness of the warrant's information.

This second argument is incorrect. The July 12, 2019 affidavit presented information that was current, not stale. Four months earlier, the traffic stop refreshed police knowledge of Delgado's membership in the Highland Park gang. His gang had been criminally active in the most recent six months. Delgado lived at a gang hangout. Gang members continued to congregate there up to the day of the SUV visit, which is why police were watching when the black SUV appeared. This was one week before the date of the affidavit. Fresh events prompted the search warrant. Whether Delgado's *convictions* were old or new was immaterial.

Delgado's other arguments are moot.

7

## DISPOSITION

The judgment is affirmed.


WILEY, J.


I concur:


GRIMES, Acting P. J.

**STRATTON, J., Dissenting.**

I write to register my disagreement with the majority's view that probable cause supported the issuance of the warrant to search appellant's house. The issue for me is: does personal possession of drugs and a gun by a gang member after being in a house for three to five minutes provide probable cause to believe he got those items from the residence he was visiting? I conclude the answer is "no." Accompanied by the affiant's recitation of his expertise in gang activity, the facts set out in the affidavit to the warrant were these:

- The Highland Park street gang is a well-established criminal street gang, which routinely participates in aggravated assaults, robberies and murder as a form of intimidation so the gang can freely sell narcotics and firearms without fear that community members will provide information to the police.
- Appellant is a documented member of the Highland Park street gang.
- Appellant has four felony convictions for assault with a deadly weapon, carjacking, gang member with a gun, and possession of controlled substances for sale.
- Appellant's residence is in gang territory and is a known "gang hangout" where gang members have been seen at and/or leaving on a regular and frequent basis.

So far, we know appellant was an active gang member, a convicted felon, and his house was a frequent hangout for gang members in gang territory. In my view, this is not probable cause for a warrant under California case law. (*People v. Pressey* (2002) 102 Cal.App.4th 1178 [use of drugs or possession of drugs not for sale does not necessarily provide probable cause to search

1

residence for drugs].)  Let's add more facts from the affidavit that are specific to this house:

- On July 5, 2019, two officers were monitoring the house when a black Lexus stopped in front and two males (Ruiz, a documented gang member on parole, and Medina) got out of the car and went into the house.  "Three to five minutes" later they left the house and got into the car.  "A few moments later," appellant came out of the house and walked to the car, leaned into the open, front passenger window for a few seconds and immediately went back into the house.  The car drove away.
- The officers then stopped the black Lexus, which was driven by a female gang "associate."  Medina had 15.84 gross grams of cocaine, 200.37 gross grams of marijuana, 19 gross grams of cannabis, a loaded firearm, and $701 in U.S. currency on his person.  Another firearm and 1.49 gross grams of methamphetamine were also found in the car.
- In the year to date six robberies, twelve aggravated assaults and eight shootings have been attributed to the Highland Park street gang in addition to ten firearms being seized from active gang members.

Based on this information, the affiant swore to the issuing magistrate that, in his opinion, appellant was supplying fellow gang members with narcotics and firearms to further the criminal enterprise of the Highland Park street gang.  He also opined that when appellant came out to the car and leaned into the open window for a few seconds, he was "possibly delivering narcotics and/or firearms."

This warrant is based on nothing more than speculation devoid of relevant factual underpinning.  The affiant had no basis

to accuse appellant of drug and gun-running from his house on July 5, 2019, except the affiant's own generalized and unspecific profile of the house as a gang hangout. The affidavit lacks any specific information upon which rational inferences and conclusions could be drawn. There was no observation of events in the house or of anything being "transferred" from appellant to an occupant of the black Lexus. There was no information that the house contained narcotics and guns at that time or in the past. There is no explanation of what the officer meant by "gang hangout": for example, an expert opinion by the gang officer that drugs, guns or contraband are usually kept or stowed at a "gang hangout." The total duration of activity observed by the officers was less than five minutes, perhaps a minute of which involved appellant "conversing," as the People characterized it, with the occupants of the car.

The majority finds it significant that Medina carried drugs and a gun on his person. That does not establish a fair probability that he obtained the items from the house. For all we know, at 7:00 p.m. Medina was on his way to a night out and had left his own home with his own illegal commodities, particularly because the small amounts were indicative of personal use. (For comparison, a pink package of Sweet and Low contains 1 gram.) Even so, both views, mine and the majority's, are speculation only, not the exercise of evidence-based common sense.

Stopping gang violence cannot include residential searches in the absence of specific facts establishing a "fair probability that contraband or evidence of a crime will be found in a particular place." (*Illinois v. Gates* (1983) 462 U.S. 213, 238–239.) Probable cause is a "particularized suspicion" (*Texas v. Brown* (1983) 460 U.S. 730, 742), not a generalized profile. To

uphold this warrant requires us to assume that "gang hangouts" and "gang membership" necessarily support the corollary that drugs and firearms are ever present. I cannot agree these facts establish probable cause.

I also cannot agree that the search fell within the good faith exception of *United States v. Leon* (1984) 468 U.S. 897 (*Leon*). Under *Leon*, the Fourth Amendment exclusionary rule does not " 'bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.' " (*People v. Camarella* (1991) 54 Cal.3d 592, 600-601.) The *Leon* Court set forth four situations in which such reliance would not be established and suppression would be appropriate. One situation pertains here: "Nor would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' [Citations.]" (*Leon* at p. 923.) The relevant inquiry is under an objective standard: whether a reasonable and well-trained officer "would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." (*Camarella,* at p. 606.)

Here, the affiant swore he had been a police officer for over 28 years and involved in gang interlocution for over six years. Significantly he never opined to the issuing magistrate that it would be fairly probable that contraband would be located at the residence. Instead, he stated his sole conclusion that appellant was supplying guns and drugs to fellow gang members. Arguably, his own objective professional analysis of probable cause is called into question as he went on to ask the magistrate

4

to issue the warrant so that "the criminal street gang will be stopped and an intangible number of violent crimes will be prevented, allowing the community members of the Highland Park community to live peacefully and free from the fear of violent gang activity." A well-trained officer would know that in a warrant application, this statement, while laudable, cannot stand in for particularized facts.

I find it not objectively reasonable to conclude there is a "fair probability" that a residence is the source of a known gang member's drugs and gun just because he visited the "hangout" for three to five minutes before his car was detained. I would require more particularized facts linking the residence with the alleged criminal activity predicted by the affiant. The items seized in the search should have been suppressed.

STRATTON, J.